

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**September 17, 2020 11:36**

By: CHRISTOPHER B. CONGENI 0078160

Confirmation Nbr. 2074580

BOULDER HEALTHCARE, LLC, ET AL.                              CV 20 937366

     vs.

BOULDER FG HOLDINGS, LLC, ET AL.            **Judge:**  JOHN J. RUSSO

**Pages Filed:**  34

# EXHIBIT 2

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| BOULDER HEALTHCARE, LLC<br>c/o ACFB Incorporated, Registered Agent<br>200 Public Square, Ste. 2300<br>Cleveland, OH 44114 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| | ) | |
| and | )<br>) | |
| | ) | |
| HILLSTONE HEALTHCARE, LLC<br>c/o ACFB Incorporated, Registered Agent<br>200 Public Square, Ste. 2300<br>Cleveland, OH 44114 | )<br>)<br>)<br>)<br>) | **COMPLAINT (BREACH OF CONTRACT;<br>UNJUST ENRICHMENT; FRAUDULENT<br>INDUCEMENT)** |
| | ) | |
| and | )<br>) | |
| | ) | |
| PAUL BERGSTEN<br>544 Enterprise Drive<br>Lewis Center, OH 43035 | )<br>)<br>) | **(JURY DEMAND ENDORSED HEREON)** |
| | ) | |
| And | )<br>) | |
| | ) | |
| MATTHEW DAPORE<br>544 Enterprise Drive<br>Lewis Center, OH 43035 | )<br>)<br>) | |
| | ) | |
| *Plaintiffs*, | )<br>)<br>) | |
| | ) | |
| v. | )<br>) | |
| | ) | |
| BOULDER FG HOLDINGS, LLC<br>c/o U-B Corporation, Registered Agent<br>1660 West 2nd Street, Suite 1100<br>Cleveland, OH 44113 | )<br>)<br>)<br>)<br>) | |
| | ) | |
| and | )<br>) | |
| | ) | |
| BOULDER OPERATIONS HOLDINGS,<br>LLC<br>10 Eastbourne Drive<br>Spring Valley, NY 10977 | )<br>)<br>)<br>)<br>) | |
| | ) | |
| and | )<br>) | |

**EXHIBIT 2**

SAMUEL GOLDNER
1251 46th Street Apt. 1
Brooklyn, NY 11219-2087

and

ARIEL FEIN
10 Eastbourne Drive
Spring Valley, NY 10977

> *Defendants.*

Plaintiffs, Boulder Healthcare, LLC ("Boulder Healthcare") Hillstone Healthcare, LLC ("Hillstone"), Paul Bergsten ("Bergsten"), and Matthew Dapore ("Dapore") (collectively, "Plaintiffs"), for their Complaint against Defendants, Boulder FG Holdings, LLC ("Boulder FG"), Boulder Operations Holdings, LLC ("Boulder Operations"), Samuel Goldner ("Goldner") and Ariel Fein ("Fein") (collectively, "Defendants") state as follows:

## **PARTIES, JURISDICTION AND VENUE**

1.      Boulder Healthcare is an Ohio limited liability company.

2.      Hillstone is a Delaware limited liability company which does business in Ohio.

3.      Bergsten is a resident of Ohio and holds ownership interests in Hillstone and Boulder Healthcare.

4.      Dapore is a resident of Ohio and holds ownership interests in Hillstone and Boulder Healthcare.

5.      Boulder FG is an Ohio limited liability company.

6.      Boulder Operations is a Delaware limited liability company which does business in Ohio.

7.      Goldner and Fein are individuals residing in the State of New York, who, at all times material hereto, held ownership interests in the members of Boulder FG.

**EXHIBIT 2**

8. This Court has subject matter jurisdiction over this action pursuant to Ohio Rev. Code §2305.01.

9. This Court has personal jurisdiction over Defendant pursuant to Ohio Rev. Code §2307.382.

10. Venue is proper before this Court pursuant to Ohio Civ. R. 3(C)(1), (2), (3), and (6).

## FACTUAL BACKGROUND

11. Boulder Healthcare and Boulder FG are parties to a certain Limited Liability Company Agreement, dated December 21, 2018 (the "LLC Agreement") for Boulder Operations.

12. Boulder Operations operates nursing home and assisted living facilities in the State of Ohio.

13. Pursuant to the LLC Agreement, Boulder Healthcare was the owner of 50 units of Boulder Operations, which represented 50% of the outstanding equity of Boulder Operations.

14. Pursuant to the LLC Agreement, Boulder FG was the owner of the other 50 units of Boulder Operations, which represented the other 50% of the outstanding equity of Boulder Operations.

15. In June 2019, Boulder Operations was unable to meet payroll and other expenses.

16. In June 2019, Boulder Healthcare and Boulder FG, together with Hillstone, Dapore, Bergsten, Goldner, Fein, and Boulder Healthcare Management, LLC, an Ohio limited liability company ("Boulder Healthcare Management") entered into discussions concerning Boulder Healthcare potentially selling its 50 units of Boulder Operations to Boulder FG.

17. Boulder FG, by and through its agents, Goldner and Fein, represented to Boulder Healthcare and Hillstone, by and through their agents, Dapore and Bergsten, that Boulder FG

would purchase Boulder Healthcare's shares in Boulder Operations if Hillstone, Boulder Healthcare, Dapore and/or Bergsten paid money into Boulder Operations for purposes of Boulder Operations making payroll and other expenses.

18.     In reliance upon the representations of Boulder FG, by and through its agents, Goldner and Fein, Hillstone Healthcare paid $620,000 into Boulder Operations on June 6, 2019 and paid $150,000 into Boulder Operations on June 7, 2019, and Bergsten paid $150,000 into Boulder Operations on June 10, 2019 (collectively, the "Advanced Payments"). True and correct copies of checks reflecting these Advanced Payments are attached hereto as Exhibit "1" and are incorporated by reference herein.

19.     On July 1, 2019, Boulder Healthcare and Boulder FG, together with Dapore, Bergsten, Goldner, Fein, and Boulder Healthcare Management entered into a certain Unit Purchase Agreement (the "Unit Purchase Agreement"), a true and correct copy of which is attached hereto as Exhibit "2" and incorporated by reference herein.

20.     Under the terms of Section 2 of the Unit Purchase Agreement, Boulder Healthcare agreed to sell its 50 units of Boulder Operations (the "Transferred Shares") to Boulder FG for the total purchase price of $1,500,000.00 (the "Purchase Price").

21.     Under the terms of Section 2 of the Unit Purchase Agreement, Boulder FG agreed to pay the Purchase Price to Boulder Operations in three installments of $500,000 each, due on or prior to October 2, 2019, July 1, 2020, and July 1, 2021.

22.     As of the date of this Complaint, Boulder FG has not paid any portion of the Purchase Price to Boulder Healthcare for the Transferred Shares.

**EXHIBIT 2**

23.     Boulder FG is past due on its payment of $500,000 due on or prior to October 2, 2019 and on its payment of $500,000 due on or prior to July 1, 2020, under the Unit Purchase Agreement.

## COUNT ONE

### (Breach of Contract – Boulder Healthcare v. Boulder FG)

24.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if fully stated herein.

25.     Under the terms of the Unit Purchase Agreement, including but not limited to Section 2, titled, "Purchase and Sale," Boulder Healthcare agreed to sell, and Boulder FG agreed to purchase, the Transferred Shares for the Purchase Price, to be paid in three installments of $500,000 each, due on or prior to October 2, 2019, July 1, 2020, and July 1, 2021.

26.     Boulder Healthcare has fully performed all of its obligations under the Unit Purchase Agreement, including but not limited to, transferring the Transferred Shares and control of Boulder Operations to Boulder FG.

27.     Boulder FG has breached the Unit Purchase Agreement, including, but not limited to Section 2 of the Unit Purchase Agreement, by refusing to pay the Purchase Price for the Transferred Shares.

28.     Boulder FG has breached the Unit Purchase Agreement by not making the first payment of $500,000 to Boulder Healthcare on or prior to October 2, 2019, as required by the Unit Purchase Agreement.

29.     Boulder FG has breached the Unit Purchase Agreement by not making the second payment of $500,000 to Boulder Healthcare on or prior to July 1, 2020, as required by the Unit Purchase Agreement.

30.     Boulder Healthcare has made demand upon Boulder FG to pay the 2 past-due installments of the Purchase Price, including but not limited to in a October 31, 2019 letter from then-Boulder Healthcare's counsel to then-Boulder FG's counsel, a true and correct copy of which is attached hereto as Exhibit "3" and incorporated by reference herein.

31.     Boulder FG has refused to pay the past-due installments of the Purchase Price and the first $1,000,000 of the Purchase Price remains outstanding.

32.     As a result of Boulder FG's breaches of the Unit Purchase Agreement, Boulder Healthcare has been damaged in an amount not presently known, but which is believed to be in excess of $1,000,000, together with interest from on and after October 2, 2019, costs and reasonable attorneys' fees.

## COUNT TWO

### (Unjust Enrichment – Boulder Healthcare v. Boulder FG)

33.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if fully stated herein.

34.     As a result of Boulder Healthcare transferring the Transferred Shares and control of Boulder Operations to Boulder FG, for which Boulder Healthcare has not been paid, Boulder Healthcare has conferred a benefit upon Boulder FG, which was knowingly received by Boulder FG, and retention of that benefit by Boulder FG would be unjust under the circumstances.

35.     Boulder FG has been unjustly enriched in an amount not presently known, but which is believed to be in excess of $1,000,000, together with interest from on and after October 2, 2019, as a result of transferring the Transferred Shares and control of Boulder Operations.

36.     Boulder Healthcare has been damaged by Boulder FG's unjust enrichment in an amount not presently known, but which is believed to be in excess of $1,000,000, together with interest from on and after October 2, 2019, costs and reasonable attorneys' fees.

## COUNT THREE

### (Unjust Enrichment – Plaintiffs v. Defendants)

37.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if fully stated herein.

38.     As a result of Plaintiffs, personally and/or by and through their membership or ownership interests, paying the Advanced Payments totaling $920,000 to Boulder Operations in reliance upon Defendants' representations that they would purchase the Transferred Shares from Boulder Healthcare, for which Plaintiffs have not been paid, Plaintiffs conferred a benefit upon Defendants, which was knowingly received by Defendants, and retention of that benefit by Defendants would be unjust under the circumstances.

39.     Defendants have been unjustly enriched in an amount not presently known, but which is believed to be in excess of $920,000, together with interest from on and after June 6, 2019, as a result of the Advanced Payments.

40.     Plaintiffs have been damaged by Defendants' unjust enrichment in an amount not presently known, but which is believed to be in excess of $920,000, together with interest from on and after June 6, 2019, costs and reasonable attorneys' fees.

## COUNT FOUR

### (Fraudulent Inducement – Plaintiffs v. Boulder FG, Goldner, and Fein)

41.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if fully stated herein.

**EXHIBIT 2**

42.     Boulder FG, by and through its agents, Goldner and Fein, falsely represented to Boulder Healthcare and Hillstone, by and through their agents, Bergsten and Dapore, that Boulder FG would pay the Purchase Price to Boulder Healthcare in exchange for the Transferred Shares and control of Boulder Operations.

43.     Boulder FG, by and through its agents, Golder and Fein, falsely represented to Boulder Healthcare and Hillstone, by and through their agents, Bergsten and Dapore, that Golder and Fein would indemnify Bergsten and Dapore for liabilities under a certain Guaranty executed by Bergsten and Dapore on December 21, 2018 (the "Guaranty") if Boulder Healthcare sold the Transferred Shares to Boulder FG and transferred the Transferred Shares and control of Boulder Operations to Boulder FG. A copy of the Guaranty is attached hereto as <u>Exhibit "4"</u> and incorporated by reference herein.

44.     Boulder FG, by and through its agents, Goldner and Fein, represented to Boulder Healthcare and Hillstone, by and through their agents, Dapore and Bergsten, that Boulder FG would purchase Boulder Healthcare's shares in Boulder Operations if Hillstone, Boulder Healthcare, Dapore and/or Bergsten paid the Advanced Payments for purposes of Boulder Operations making payroll and other expenses.

45.     Said representations of Boulder FG's agents, Goldner and Fein, were made to Boulder Healthcare's and Hillstone's agents, Bergsten and Dapore, in meetings and through written and/or verbal communications from on or about June 2019 through July 2019.

46.     Boulder FG, Goldner and Fein knew their representations to Plaintiffs were false when they made them.

47.     Boulder FG's, Goldner's and Fein's false representations were material to Boulder Healthcare, Bergsten and Dapore entering into the Unit Purchase Agreement and to Boulder Healthcare transferring the Transferred Shares and control of Boulder Operations to Boulder FG.

48.     Boulder FG's, Goldner's and Fein's false representations were material to Plaintiffs, personally and/or by and through their membership or ownership interests, paying the Advanced Payments totaling $920,000 to Boulder Operations.

49.     Boulder FG, Goldner and Fein intended to induce Plaintiffs into relying on their false representations so that Plaintiffs would enter into the Unit Purchase Agreement, would transfer the Transferred Shares and control of Boulder Operations to Boulder FG, and would pay the Advanced Payments.

50.     Plaintiffs justifiably relied upon Boulder FG's, Goldner's and Fein's false representations.

51.     Plaintiffs have suffered injury proximately caused by their reliance on Boulder FG's, Goldner's and Fein's false representations.

52.     As a result of Boulder FG's, Goldner's and Fein's fraudulent inducement, Plaintiffs have been damaged in an amount not presently known, but which is believed to be in excess of $1,920,000, together with interest from on and after June 6, 2019, punitive damages, costs and reasonable attorneys' fees.

**WHEREFORE**, Plaintiffs, Boulder Healthcare, LLC, Hillstone Healthcare, LLC, Boulder Operations Holdings, LLC, Paul Bergsten and Matthew Dapore, demand judgment against Defendants, Boulder FG Holdings, LLC, Boulder Operations Holdings, LLC, Samuel Goldner, and Ariel Fein, as follows: (1) on Counts I and II, against Boulder FG Holdings, LLC, in an amount not presently known, but which is believed to be in excess of $1,000,000, together with interest

from on and after October 2, 2019, costs and reasonable attorneys' fees; (2) on Count III, jointly and severally against Boulder FG Holdings, LLC, Boulder Operations Holdings, LLC, Samuel Goldner and Ariel Fein in an amount not presently known, but which is believed to be in excess of $920,000, together with interest from on and after June 6, 2019, costs and reasonable attorneys' fees; (3) on Count IV, jointly and severally against Boulder FG Holdings, LLC, Samuel Goldner and Ariel Fein in an amount not presently known, but which is believed to be in excess of $1,920,000, together with punitive damages, interest from on and after June 6, 2019, costs and reasonable attorneys' fees; and (4) and for such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ Christopher B. Congeni
Christopher B. Congeni (#0078160)
Matthew R. Duncan (#0076420)
Daniel J. Rudary (#0090482)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH 44308
(330) 253-5060
Fax: (330) 253-1977
Email: cbcongeni@bmdllc.com
        mrduncan@bmdllc.com
        djrudary@bmdllc.com
*Counsel for Plaintiffs*

### JURY DEMAND

Pursuant to Ohio Rule of Civil Procedure 38(B), Plaintiffs hereby demand a trial by jury on all issues herein.

/s/ Christopher B. Congeni
Christopher B. Congeni (#0078160)
*Counsel for Plaintiffs*

## INSTRUCTIONS FOR SERVICE

Plaintiffs request that the Cuyahoga County Clerk of Courts serve the Defendants at the addresses listed in the caption of this pleading via certified mail, return receipt requested.

*/s/ Christopher B. Congeni*
Christopher B. Congeni (#0078160)
*Counsel for Plaintiffs*

4845-1283-9115, v. 2

## EXHIBIT 2

## Authentication Required                                        ✕

10Jun          ↙          check # 2017          -
                          Check                 $150,000.00

ading your checks..

Date                        Online Description         Check Number
Monday, June 10, 2019       CHECK # 2017Edit           00000002017

Amount of the Check
$150,000.00

How this will appear on your statement
CHECK # 2017

PAUL B. BERGSTEN                                          2017
1703 BIRTLES CT
GALENA, OH  43021            6-10-19                      56 64/440
                                       Date               464

Pay to the   Boulder Dispersement        $ 150,000.00
Order of

One Hundred Fifty Thousand          100   Dollars

KeyBank National Association
1-800-KEY2YOU® Key.com®

For

⑈044000642⑈    ███████████    2017

EXHIBIT
1

**EXHIBIT 2**

ENDORSE HERE
X
FOR DEPOSIT ONLY
CHECK BOX FOR MOBILE/REMOTE DEPOSIT
TMID 34371611954380
MALTH
15:06:23
6/10/2019
>>031306278<<
[redacted]

**EXHIBIT 2**

Print This Page                              Close Check Viewer



**EXHIBIT 2**

Print This Page                    Close Check Viewer



**EXHIBIT 2**

## UNIT PURCHASE AGREEMENT

THIS UNIT PURCHASE AGREEMENT (this "Agreement"), is made and entered into as of July 1, 2019 by and among BOULDER HEALTHCARE LLC, an Ohio limited liability company ("Seller"), BOULDER FG HOLDINGS LLC, an Ohio limited liability company ("Purchaser"), MATTHEW DAPORE, an individual ("Dapore"), PAUL BERGSTEN, an individual ("Bergsten"), SAMUEL GOLDNER, an individual ("Goldner"), ARIEL FEIN, an individual ("Fein"), and BOULDER HEALTHCARE MANAGEMENT LLC, an Ohio limited liability company (the "Management Company").

## RECITALS

A.      Seller is the owner of 50 Units of Boulder Operations Holdings LLC, a Delaware limited liability company (the "Company"), which represents 50% of the outstanding equity of the Company.  Purchaser is the owner of 50 Units of the Company, which represents 50% of the outstanding equity of the Company.  The Units of the Company are uncertificated.

B.      Seller desires to sell to Purchaser and Purchaser desires to purchase from Seller all of the Units of the Company owned by Seller (the "Transferred Units"), pursuant to the terms and conditions contained in this Agreement.

C.      Dapore and Bergsten are the only members of Seller and affiliates of Goldner and Fein are the only members of Purchaser.

D.      Seller and Purchaser are parties to the Limited Liability Company Agreement of the Company dated as of December 21, 2018 (the "LLC Agreement").

E.      The Company, as Tenant, and certain entities, as Landlord, are parties to that certain Master Lease dated as of December 21, 2018 (the "Lease").

F.      Dapore and Bergsten have guaranteed certain obligations under the Lease pursuant to a Guaranty of Lease dated as of December 21, 2018 (the "Guaranty").

G.      The Management Company is the manager of the facilities covered under the Lease, pursuant to management agreements, each dated as of December 21, 2018, between the Management Company and each facility operator, including any side letter executed in connection therewith (the "Management Agreements").

H.      Seller and Purchaser, together with certain other parties, are party to that certain pledge agreement dated as of December 21, 2018, made in favor of White Oak Healthcare Finance, LLC (the "Pledge Agreement").

I.      Seller previously funded at least $1,000,000.00 of cash to the Company or its subsidiaries (the "Seller Capital").



**EXHIBIT 2**

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Recitals</u>. The Recitals hereto are an integral part of this Agreement and are hereby incorporated herein by reference and are made a part hereof.

2. <u>Purchase and Sale</u>.

 (a) <u>Sale</u>. Subject to the terms and conditions herein set forth, Seller hereby agrees to sell to Purchaser the Transferred Units and Purchaser agrees to purchase from Seller the Transferred Units.

 (b) <u>Purchase Price</u>. The aggregate purchase price for the Transferred Units is $1,500,000.00 (the "Purchase Price"). The Purchase Price shall be payable as follows: (a) $500,000 shall be payable by wire transfer of immediately available funds on or prior to October 2, 2019; (b) $500,000 shall be payable by wire transfer of immediately available funds on or prior to July 1, 2020; and (c) $500,000 shall be payable to Seller by wire transfer of immediately available funds on or prior to July 1, 2021.

3. <u>Closing; Closing Deliveries</u>.

 (a) <u>Time, Date and Place of Closing</u>. The closing of the transactions contemplated by this Agreement (the "Closing") shall take place concurrently with the execution of this Agreement (the "Closing Date"), effective as of 12:01 am on the Closing Date (the "Effective Time").

 (b) <u>Deliveries at Closing</u>. At Closing, Seller shall deliver to Purchaser an equity power, in substantially the form attached hereto as <u>Exhibit A</u>, evidencing the transfer of the Transferred Units to Purchaser. Effective upon Closing: (i) Seller shall cease to be a Member of the Company, and Seller shall not be entitled to any distributions, indemnification rights, or any other rights as a member of the Company, whether or not such rights relate to a period arising prior to the date hereof, and Seller's sole rights shall be those rights expressly set forth herein; (ii) Fein, Goldner and the Company automatically release Seller, the Management Company, Bergsten and Dapore from any and all Losses based upon, resulting from, or arising out of the LLC Agreement and/or the Management Agreements, except to the extent that any such Losses (A) are the result of fraud, willful misconduct, misappropriation of funds, co-mingling of funds or Bad Boy Acts (as defined herein) or (B) are indemnifiable Losses under this Agreement; and (iii) Seller, the Management Company, Bergsten and Dapore automatically release Fein, Goldner and the Company from any and all Losses based upon, resulting from, or arising out of the LLC Agreement and/or the Management Agreements, except to the extent that any such Losses (A) are the result of fraud, willful misconduct, misappropriation of funds, co-mingling of funds or Bad Boy Acts (as defined herein) or (B) are indemnifiable Losses under this Agreement.

4. <u>Representations, Warranties and Covenants of Seller</u>. In order to induce Purchaser to purchase from Seller the Transferred Units and enter into this Agreement, Seller hereby makes the following representations, warranties and covenants to Purchaser:

**EXHIBIT 2**

    (a)   <u>Capacity</u>.  Seller has all requisite limited liability company power and authority to execute and deliver, and perform all of Seller's obligations under this Agreement.

    (b)   <u>Due Execution; Validity of Agreement</u>.  This Agreement has been duly authorized, executed and delivered by Seller, and (assuming due execution and delivery hereof by Purchaser) constitutes the valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

    (c)   <u>Ownership; Title</u>.  Seller is the owner, beneficially and of record, of all of the Transferred Units, free and clear of all liens, encumbrances, security interests, pledges, claims, or restrictions of any kind ("Lien"), other than as set forth in the LLC Agreement and/or the Pledge Agreement, and no other person, firm or entity has any interest whatsoever in the Transferred Units.  The Transferred Units represent all of the equity interest owned by Seller in the Company and Seller has no right, title or interest in any other equity interest in the Company.  Seller has not previously sold, transferred or conveyed, at any time, all or any part of the Transferred Units to any other individual or entity.

    (d)   <u>Agreement Not in Breach of Other Instruments; Governmental Consent</u>.  The execution and delivery by Seller of this Agreement and the consummation by Seller of the transactions provided for herein (i) will not result in a breach of any of the terms and provisions of any judgment, decree, order, or award of any court, governmental body, or arbitrator; (ii) do not require the consent of any governmental authority or other entity or person that have not been obtained, except as may otherwise be set forth in the Pledge Agreement; and (iii) will not result in the creation of any Lien on any of the Transferred Units.

    5.   <u>Representations, Warranties and Covenants of Purchaser</u>.  In order to induce Seller to sell the Transferred Units to Purchaser and enter into this Agreement, Purchaser hereby makes the following representations, warranties and covenants to Seller:

    (a)   <u>Capacity</u>.  Purchaser has full legal power and capacity to execute and deliver, and perform all of Purchaser's obligations under, this Agreement.

    (b)   <u>Due Execution; Validity of Agreement</u>.  This Agreement has been duly executed and delivered by Purchaser and (assuming due execution and delivery hereof by Seller), constitutes the valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms.

    (c)   <u>Agreement Not in Breach of Other Instruments; Governmental Consent</u>.  The execution and delivery by Purchaser of this Agreement and the consummation by Purchaser of the transactions provided for herein (i) will not result in a breach of any of the terms and provisions of any judgment, decree, order, or award of any court, governmental body, or arbitrator, or any applicable law, rule or regulation; and (ii) do not require the consent of any governmental authority or other entity or person that have not been obtained.

    6.   <u>Indemnification of Guarantors</u>.  The Guaranty will remain in place, without modification, following the consummation of the transactions contemplated by this Agreement.

**EXHIBIT 2**

As consideration therefore, Goldner and Fein, on a joint and several basis (the "Guaranty Indemnitors"), hereby agree to indemnify Dapore and Bergsten (each, a "Guarantor" and collectively, the "Guarantors") from any claims, liabilities, losses, damages, costs and expenses, including without limitation reasonable attorneys' fees ("Losses"), based upon, resulting from, or arising out of the Guaranty: (a) for a period of ten years from the date of the Lease (the "Covered Period"), for any Loss associated with a breach of the Obligations (as defined in the Guaranty) by the Company or its affiliates after the Closing Date that pertains to or is related to (i) a reporting obligation or notice obligation; (ii) fraud, willful misconduct, misappropriation of funds or co-mingling of funds by the Company or its affiliates; or (iii) arising under Section 1(a) – 1(i) of the Guaranty (collectively with items (i)-(ii), disregarding the qualification immediately following this definition, "Bad Boy Acts"), but only to the extent such Losses are related to the operation of the Facility on or after the Effective Time; and (b) after expiration of the Covered Period, for all Losses under the Guaranty. For the avoidance of doubt, the Guaranty Indemnitors are not responsible for indemnifying the Guarantors for any Losses incurred by the Guarantors under the Guaranty for any actions or inactions taken by the Company, the Guarantors or their affiliates prior to the Closing Date, regardless of the fact that Landlord seeks enforcement under the Guaranty after the Closing Date. In addition, the Guaranty Indemnitors covenant not to request, directly or indirectly, that Landlord's lender declare any event of default under Landlord's or the Company's loan documents in an effort to cause an Event of Default under the Lease.

7.     Indemnification of Purchaser, the Company and Guaranty Indemnitors.     The Guarantors, on a joint and several basis, hereby agree to indemnify Purchaser, the Company, the Guaranty Indemnitors and their affiliates (the "Purchaser Parties") for (i) any Losses incurred by or asserted against the Purchaser Parties for any claim against the Purchaser Parties in connection with the operation of the Company and its affiliates (including breach of the Obligations by the Company, as tenant, or its affiliates) prior to the Closing Date to the extent such claim pertains to, is related to or is a result of any Bad Boy Acts by Seller, the Company, the Guarantors or their affiliates; and (ii) 50% of any Losses arising out of any recoupment claim made against the Company or its affiliates by a local, state or federal governmental entity or program relating to the period of time from December 21, 2018 through June 30, 2019 (each, a "Government Claim"), unless such Government Claim is a result of a Bad Boy Act by Seller and its affiliates (including the Company, Dapore or Bergsten) prior to the Closing Date, in which case Seller and the Guarantors shall be solely liable for such Losses and shall indemnify the Purchaser Parties for all such Losses. For the avoidance of doubt, the Guarantors shall not have any obligation to the indemnify the Purchaser Parties for any Losses arising from third party claims related to the Company's (or its affiliates') failure to pay such third party for goods and/or services rendered by such third party to the Company and/or its affiliates, so long as such third party claim is not the result of any Bad Boy Act by Seller, the Company, the Guarantors or their affiliates.

8.     Offset Rights.     Any indemnification obligation or other liability of Seller, Dapore or Bergsten under this Agreement may be satisfied, discharged or paid by off-set against payment of the Purchase Price due and owing pursuant to Section 2(b) or Guaranty Indemnitors' indemnification obligations pursuant to Section 6.

9.     Resignation; Appointment.     As of the Effective Time, Dapore and Bergsten shall be deemed to have resigned from all offices and positions they hold, of any nature, with the

**EXHIBIT 2**

Company and any of its affiliates, including without limitation as an officer, director, manager or employee (other than, for the avoidance of doubt, the Management Company) without any further action necessary on the part of any party. Such resignations will be deemed accepted by the Company and its affiliates as of the Effective Time.

10. <u>Termination of Management Agreements</u>. Each Management Agreement will be deemed terminated and of no further force and effect (other than terms that survive the termination of the agreement) effective as of the Effective Time, without any further action necessary on the part of any party. As of the Effective Time, the Management Company shall have no right to any further payments of any amounts under the Management Agreements.

11. <u>Miscellaneous</u>.

(a) <u>Expenses</u>. Each party hereto shall be responsible for the payment of any fees, costs or expenses incurred by such party in connection with the transactions contemplated by this Agreement.

(b) <u>Further Assurances</u>. Each of the parties agrees to cooperate in the effectuation of the transactions contemplated under this Agreement and to execute any and all additional documents and to take such additional action as is reasonably necessary or appropriate for such purposes.

(c) <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio without giving effect to conflicts of law principles.

(d) <u>Headings</u>. Section and caption headings are not to be considered part of this Agreement. They are included solely for convenience and are not intended to be full and accurate descriptions of the contents of this Agreement.

(e) <u>Amendments</u>. This Agreement may be amended or modified only in a writing executed by the parties to this Agreement.

(f) <u>Binding Effect</u>. This Agreement shall bind and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

(g) <u>Entire Agreement</u>. This Agreement, together with the other documents and instruments executed in connection herewith, constitute the entire understanding among the parties and supersedes any prior understandings and agreements between them respecting the within subject matter. There are no representations, agreements, arrangements or understandings, oral or written, between or among the parties with respect to the within subject matter, other than as set forth in this Agreement.

(h) <u>Severability</u>. If any provisions of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless continue in full force and effect without being impaired or invalidated in any way and shall be construed in accordance with the purposes and tenor and effect of this Agreement.

**EXHIBIT 2**

(i)      Construction.  The rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement, or any amendments, schedules or exhibits to this Agreement.

(j)      Counterparts.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same Agreement.  The signature of any party to any counterpart, including any facsimile or .pdf thereof, may be appended to any other counterpart and, when so appended, shall constitute one and the same Agreement.

(k)      Non-Disparagement.  Each of Bergsten, Dapore, Fein and Goldner agree not to make any oral or written statement about any of the other parties to this Agreement which is intended or reasonably likely to disparage the other party, or otherwise degrade the other party's reputation in the business community.

[Remainder of Page Intentionally Left Blank]

Electronically Filed 06/22/2020 09:21 / ANSWERS / CV 20 931951 / Confirmation Nbr. 2017463 / CLJSZ
Electronically Filed 09/17/2020 11:36 / / CV 20 937366 / Confirmation Nbr. 2074580 / CLSLP

EXHIBIT 2

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

**SELLER:**

**BOULDER HEALTHCARE LLC**

By:_____
   Name: Paul Bergsten
   Title:  CEO

**PURCHASER:**

**BOULDER FG HOLDINGS LLC**

By:_____
   Name:
   Title:

**GUARANTORS:**

_____
Matthew Dapore

_____
Paul Bergsten

**GUARANTY INDEMNITORS:**

_____
Samuel Goldner

_____
Ariel Fein

For purposes of Section 10:

**BOULDER HEALTHCARE MANAGEMENT LLC**

By:_____
Name:  Paul Bergsten
Title:  CEO

**EXHIBIT 2**

## Exhibit A

### IRREVOCABLE POWER TO TRANSFER EQUITY INTEREST

FOR VALUE RECEIVED, the undersigned, BOULDER HEALTHCARE LLC, an Ohio limited liability company: (a) hereby sells, assigns and transfers unto BOULDER FG HOLDINGS LLC, an Ohio limited liability company, Fifty (50) Units of BOULDER OPERATIONS HOLDINGS LLC, a Delaware limited liability company (the "Company"), standing in the undersigned's name on the books of the Company; and (b) does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer said shares on the books of the Company with full power of substitution in the premises.

Dated: _____, 2019                          BOULDER HEALTHCARE LLC

                                                  By:_____
                                                      Name: Paul Bergsten
                                                      Title:   CEO

**2**

## EXHIBIT 2



Daniel J. O'Brien
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Direct Dial: 216.363.4691
Fax: 216.363.4588
dobrien@beneschlaw.com

October 31, 2019

Daniel A. Gottesman
Ulmer & Berne LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, OH  44113

Re:     Unit Purchase Agreement dated July 1, 2009 (the "Unit Purchase Agreement")

Dear Danny:

This letter is written to follow up on my email correspondence to you on October 10, 2019, with respect to the Unit Purchase Agreement. Your client has still not made the $500,000 payment that was due to my client on October 2, 2019, pursuant to Section 2 of the Unit Purchase Agreement. We understand that your client believes that it is entitled to offset for unspecified breaches under the lease guaranty. To date, and despite repeated requests, we have not received any information with respect to the nature or extent of these alleged breaches. Please pay the $500,000 ASAP, or provide detailed information with respect to the alleged breaches so that we can review and respond.

Note that my client is not waiving any rights or remedies with respect to your client's failure to pay the $500,000 that is now past due.

Sincerely,

BENESCH, FRIEDLANDER,
    COPLAN & ARONOFF LLP

*Daniel J. O'Brien*

Daniel J. O'Brien

www.beneschlaw.com

EXHIBIT
3

**EXHIBIT 2**

## GUARANTY OF LEASE

THIS GUARANTY OF LEASE (this "Guaranty") is made by Paul Bergsten and Matthew Dapore (referred to herein individually as, a "Guarantor", and collectively as, "Guarantors") in favor of the entities set forth on Schedule 1 attached hereto and made a part hereof (collectively, "Landlord"), in connection with that certain Master Lease, dated as of December 20, 2018 (the "Lease"), pursuant to which Landlord leases to Boulder Operations Holdings LLC, a Delaware limited liability company ("Tenant"), the "Leased Premises" as defined in the Lease. As a material inducement to and in consideration of Landlord entering into the Lease, Landlord having indicated that it would not enter into the Lease without the execution of this Guaranty, Guarantors do hereby agree with Landlord as follows:

1.      Guarantors do hereby, jointly and severally, unconditionally and irrevocably guarantee to Landlord, as a primary obligor and not as a surety, (a) the full and punctual payment of all rents and other sums payable by Tenant under the Lease, and (b) the full and punctual performance and observance of all terms, covenants and conditions on the part of Tenant to be performed and observed under the Lease (all such terms, covenants, conditions, agreements, and obligations being herein collectively referred to as the "Tenant Obligations"); provided, however, that any obligations of Tenant arising exclusively from a Landlord Loan Default or arising out of the termination of the Lease pursuant to Sections 17.1 (o)(ii), (p), (u), or (v) of the Lease (collectively, the "Non-Guaranteed Obligations") shall not be deemed to be Tenant Obligations hereunder.   Guarantors further agree to indemnify and hold Landlord harmless from any loss, liability, damage or expense (including reasonable attorney's fees) arising from the failure of Tenant to perform any of the Tenant Obligations and/or the enforcement of this Guaranty (the "Indemnification Obligations" and, collectively with the Tenant Obligations, the "Obligations"). Upon an Event of Default by Tenant under the Lease, after applicable grace periods, Guarantors shall pay or perform the Tenant Obligations so in default, as applicable; provided, however, that, except as otherwise set forth herein, under no circumstances shall Guarantors be required to pay more than an aggregate amount equal to Sixteen Million Dollars ($16,000,000) with respect to the Tenant Obligations; provided further, that, except as otherwise set forth herein, under no circumstance shall Guarantors be required to pay more than an aggregate amount equal to Eight Million Dollars ($8,000,000) with respect to Tenant Obligations arising out of (i) any Event of Default pursuant to Section 17.1(i), (j), (k), (n), (o)(i), (q), or (w) of the Lease, so long as such Event of Default is not also an Event of Default under any other subparagraph of Section 17.1 of the Lease, or (ii) any Event of Default pursuant to Sections 17.1(b) or (m) of the Lease which solely relates to a breach of any financial covenant contained in the Lease or a breach with respect to the clinical operations of the Facilities (including, without limitation the covenants contained in Section 19.1(p) of the Lease), so long as such Event of Default is not also an Event of Default under any other subparagraph of Section 17.1, in which event such Event of Default shall be subject to the limitations set forth herein with respect to such other subparagraph of Section 17.1, if any.  Notwithstanding the foregoing, it is expressly understood and agreed that the aforesaid limitations on liability shall in no way affect or apply to Guarantors' continued unlimited personal liability for the payment to Landlord of:



**EXHIBIT 2**

(a) any rents, issues, profits and/or income collected by Tenant or any Subtenant in excess of normal and verifiable operating expenses from any Facility after the occurrence of an Event of Default hereunder or under the Lease;

(b) any rent, issues, profits and/or income from any Facility which have been prepaid more than thirty (30) days in advance;

(c) to the extent that sufficient revenues are generated from the Facilities, payments of taxes, installments of assessments, water charges, sewer charges, and other fees, taxes, charges and assessments of every kind and nature whatsoever assessed or charged against or constituting a lien on any Real Property and insurance premiums and deductibles, payment of which is required to be made by Tenant or any Subtenant under the terms of the Lease;

(d) insurance proceeds and condemnation awards (or sums paid in lieu thereof), payments and/or other form of consideration which Tenant or any Subtenant receives and which are used for any purpose inconsistent with the terms of the Lease or not approved in writing by Landlord;

(e) Tenant's or any Subtenant's failure to obtain and maintain (or cause to be obtained and maintained) insurance as required by the Lease;

(f) Intentionally Deleted;

(g) damage or destruction to any Facility caused by the gross negligence or intentional acts or omissions of any Tenant or Subtenant; provided, that in the case of the failure to repair or any other matter involving the expenditure of funds, there shall be no liability unless there is available cash flow from the Facility to complete such repair or other item involving the expenditure of funds;

(h) any claims, losses, costs, penalties, damages, charges and/or expenses (including reasonable attorneys' and consultants' fees) (collectively, "Losses") incurred by or asserted against Landlord as a result of Tenant's or any Subtenant's failure to observe, comply or perform any of its covenants and indemnities respecting the existence, handling, storage, transportation, release or discharge of Hazardous Materials or Hazardous Waste, as defined in Article X of the Lease subject to the notice and cure periods set forth therein; and

(i) any Losses incurred by or asserted against Landlord as a result of fraud or intentional material misrepresentation in connection with the Lease.

2.      Each Guarantor does hereby agree that, without the consent of or notice to Guarantors and without affecting any of the obligations of Guarantors hereunder: (a) any term, covenant or condition of the Lease may be amended, compromised, released or otherwise altered by Landlord and Tenant, and each Guarantor does guarantee and promise to perform all the obligations of Tenant under the Lease as so amended, compromised, released or altered; (b) any guarantor of or party to the Lease may be released, substituted or added; (c) any right or remedy under the Lease may be exercised, not exercised, impaired, modified, limited, destroyed or suspended; (d) Landlord or any other Person acting on Landlord's behalf may deal in any manner

**EXHIBIT 2**

with Tenant, any guarantor, any party to the lease or any other Person; and (e) all or any part of the Leased Premises or Tenant's rights or liabilities under the Lease may be sublet, assigned or assumed. This is a continuing guaranty. The obligations of each Guarantor under this Guaranty are independent of the Tenant Obligations.

3. Each Guarantor hereby waives and agrees not to assert or take advantage of: (a) any right to require Landlord to proceed against Tenant or any other Person or to pursue any other remedy before proceeding against any Guarantor; (b) the defense of any statute of limitations in any action under or related to this Guaranty or the Lease; (c) any right or defense that may arise by reason of the incapacity, lack of authority, death or disability of Tenant or any other Person; and (d) any right or defense arising by reason of the absence, impairment, modification, limitation, destruction or cessation (in bankruptcy, by an election of remedies, or otherwise) of the liability of Tenant, of the subrogation rights of any Guarantor or of the right of any Guarantor to proceed against Tenant for reimbursement.

4. Each Guarantor hereby waives and agrees not to assert or take advantage of any right or defense based on the absence of any or all presentments, demands (including demands for performance), notices (including notices of adverse change in the financial status of Tenant or other facts which increase the risk to such Guarantor, notices of non-performance and notices of acceptance of this Guaranty) and protests of each and every kind.

5. Neither Guarantors' obligation to make payment in accordance with this Guaranty nor any remedy for the enforcement thereof shall be impaired, modified, changed, stayed, released or limited in any manner by any impairment, modification, change, release, limitation or stay of the liability of Tenant or its estate in bankruptcy or any remedy for the enforcement thereof, resulting from the operation of any present of future provision of the Bankruptcy Code (as defined in the Lease) or other statute or from the decision of any court interpreting any of the same, and Guarantors shall be obligated under this Guaranty as if no such impairment, stay, modification, change, release or limitation had occurred.

6. Until all of Tenant's obligations under the Lease are fully performed, Guarantors (a) shall have no right of subrogation against Tenant by reason of any payments or acts of performance by Guarantors under this Guaranty; and (b) subordinate any liability or indebtedness of Tenant now or hereafter held by Guarantors to the obligations of Tenant under, arising out of or related to the Lease or Tenant's use or occupancy of the Leased Premises.

7. The liability of Guarantors and all rights, powers and remedies of Landlord hereunder and under any other agreement now or at any time hereafter in force between Landlord and any Guarantor relating to the Lease shall be cumulative and not alternative and such rights, powers and remedies shall be in addition to all rights, powers and remedies given to Landlord by law.

8. This Guaranty applies to, inures to the benefit of and binds all parties hereto, their heirs, devisees, legatees, executors, administrators, representatives, successors and permitted assigns (including any purchaser at a judicial foreclosure or trustee's sale or a holder of a deed in

**EXHIBIT 2**

lieu thereof). This Guaranty may not be assigned by Landlord without the prior written consent of Guarantors, which consent shall not be unreasonably withheld, conditioned, or delayed.

9.　　　Guarantors shall not, without the prior written consent of Landlord, commence, or join with any other Person in commencing, any bankruptcy, reorganization or insolvency proceeding against Tenant. The obligations of Guarantors under this Guaranty shall not be altered, limited or affected by any proceeding, voluntarily or involuntarily, involving the bankruptcy, insolvency, receivership, reorganization, liquidation or arrangement of Tenant, or by any defense which Tenant may have by reason of any order, decree or decision of any court or administrative body resulting from any such proceeding. Guarantors shall file in any bankruptcy or other proceeding in which the filing of claims is required or permitted by law all claims which any Guarantor may have against Tenant relating to any indebtedness of Tenant to any Guarantor and will assign to Landlord all rights of such Guarantor thereunder. Landlord shall have the sole right to accept or reject any plan proposed in such proceeding and to take any other action which a party filing a claim is entitled to do. In all such cases, whether in administration, bankruptcy or otherwise, the Person or Persons authorized to pay such claim shall pay to Landlord the amount payable on such claim and, to the full extent necessary for that purpose, each Guarantor hereby assigns to Landlord all of such Guarantor's rights to any such payments or distributions to which such Guarantor would otherwise be entitled; provided, however, that each Guarantor's obligations hereunder shall not be satisfied except to the extent that Landlord receives cash by reason of any such payment or distribution. If Landlord receives anything hereunder other than cash, the same shall be held as collateral for amounts due under this Guaranty.

10.　　　If requested by Landlord, each Guarantor shall deliver to Landlord, and upon Landlord's request, to Mortgagee(s) (a) the most recent federal income tax returns for such Guarantor within thirty (30) days after the date on which such returns are filed by such Guarantor; and (b) a personal financial statement dated within ninety (90) days. All financial information and statements provided by a Guarantor to Landlord shall be certified to be true and correct in all material respects by such Guarantor.

11.　　　As a material inducement to the Landlord entering into the Lease with Tenant, each Guarantor makes the following representations and warranties to Landlord, each of which shall survive the commencement and termination of the Lease:

11.1　　Such Guarantor has the full power and authority to carry on its business and to enter into and perform all of its obligations under this Guaranty, and this Guaranty, when executed by such Guarantor, shall constitute the legal, valid and binding obligation of such Guarantor enforceable in accordance with its terms. No consent of any other Person not previously obtained by Guarantors, and no consent, approval, authorization or other action by or filing with any governmental authority not previously obtained, taken, or made, as applicable, is required in connection with the execution, delivery and performance of such Guarantor's obligations under this Guaranty.

11.2　　Such Guarantor's execution of this Guaranty and performance of his obligations hereunder will not result in a breach or violation of (a) any governmental requirements applicable to such Guarantor or any judgment, writ, injunction, decree or order of any court relating

**EXHIBIT 2**

and known to such Guarantor; or (b) any mortgage, commitment, restriction, or other document to which such Guarantor is a party or by which such Guarantor is bound.

        11.3     All statements respecting the financial condition of such Guarantor and Tenant or any Subtenant (as defined in the Lease), respectively, which have been furnished to the Landlord or which are hereafter submitted to the Landlord (a) are or shall be accurate and complete in all respects as of the dates appearing thereon; (b) present or shall present fairly the financial condition and results of operations of the Person to whom the financial statement applies as of the dates and for the periods shown on such statements; (c) disclose or shall disclose all suits, actions, proceedings and contingent liabilities materially affecting the Person to whom the financial statement applies; and (d) since the last date covered by the financial statements which have been furnished to the Landlord, there has been no material adverse change in the financial condition of the Persons to whom such statements apply. All other reports, information and documents furnished to the Landlord by such Guarantor in connection with the Lease are accurate and complete in all respects.

        11.4     There are no material actions, suits, proceedings or investigations pending or, to the best of such Guarantor's knowledge, threatened against or affecting such Guarantor in any court or before any other governmental authority, nor does such Guarantor know of any basis for any such material action, suit, proceeding or investigation.

        11.5     Such Guarantor has received a copy of the Lease, has carefully read such Lease, and understand all of the terms of such Lease.

        12.     Guarantors hereby agree that throughout the Term of the Lease, Guarantors shall not give or otherwise transfer or dispose of any material portion of Guarantors' assets to any other person or entity for less than the reasonably equivalent value of such assets. Notwithstanding the foregoing, either Guarantor may, for estate planning purposes, make a gratuitous transfer of such Guarantor's assets, outright or in trust, whether said trust is revocable or irrevocable, provided that (i) such transferee(s) executes a guaranty of the Obligations in the same form as this Guaranty pursuant to which there is no reduction in Landlord's rights or remedies, including, without limitation, the ability of Landlord to collect the Obligations against such transferee(s) (a "Transferee Guarantee"), and (ii) in the event that such transfer is in trust or to an entity, such Guarantor shall provide Landlord with evidence reasonably satisfactory to Landlord that the trustee or other person executing such Transferee Guarantee on behalf of said trust or entity is authorized to do so.

        13.     Throughout the Term of the Lease and for a period of twelve (12) months following the termination date of the Lease for any reason, each Guarantor agrees not to and to cause Tenant and each Subtenant not to solicit, recruit or hire any of any Facility's department heads, including but not limited to the administrator, director of nursing or dietary supervisor for any other long term care facility owned, operated or managed by Tenant, any Subtenant or their respective Affiliates without Landlord's written consent, which consent shall not be unreasonably withheld conditioned or delayed. Each Guarantor further agrees not to and to cause Tenant and each Subtenant not to remove patients from any Facility except pursuant to physician order or directions of the patient or the patient's family, nor to relocate patients at any Facility to any other long term

**EXHIBIT 2**

care facility owned, operated or managed by Tenant, any Subtenant or their respective Affiliates. In the event that either Guarantor, Tenant, or any Subtenant breaches the provisions of this Section 13, Landlord, and its successors and assigns, will be entitled to all legal and equitable remedies, including injunctive action, to enforce this provision. The prevailing party in any such action will be entitled to recover expenses and reasonable attorney's fees.

14.     For a period which commenced on June 29, 2018 and continuing until the date which is three (3) years following the Commencement Date, as a material inducement for Landlord agreeing to enter into this Lease, Guarantors, individually and jointly, agree not to directly or indirectly acquire, take an interest in, or provide any management, consulting, or any other services to any skilled nursing or assisted living facilities other than the Facilities and those facilities listed on Schedule 19.1(p) attached to the Lease. Notwithstanding the foregoing, in the event that at any point following the date which is fifteen (15) months following the Commencement Date, the annualized EBITDAR of Tenant over the trailing six (6) month period is equal to or greater than Twenty-Four Million Dollars ($24,000,000), then the restrictions set forth in this Section 14 shall be of no further force or effect.

15.     This Guaranty shall constitute the entire agreement between Guarantors and Landlord with respect to the subject matter hereof. No provision of this Guaranty or right of Landlord hereunder may be waived nor may any Guarantor be released from any obligation hereunder except by a writing duly executed by Landlord.

16.     If more than one Person signs this Guaranty, each such Person shall be deemed a Guarantor and the obligation of all such Guarantors shall be joint and several. When the context and construction so requires, all words used in the singular herein shall be deemed to have been used in the plural. The word "Person" as used herein shall include an individual, company, firm, association, partnership, corporation, trust or other legal entity of any kind whatsoever.

17.     Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable, all other provisions shall nevertheless be effective.

18.     The waiver or failure to enforce any provision of this Guaranty shall not operate as a waiver of any other breach of such provision or any other provisions hereof.

19.     Upon Landlord's demand, Guarantors shall reimburse Landlord for all costs and expenses, including attorneys, accountants, consultants, and expert witness fees and costs, which are incurred by Landlord in connection with the exercise of any or all of Landlord's rights and remedies under this Guaranty, including attorney's fees and costs incurred in connection with the enforcement of the Lease and/or all of Landlord's rights against Guarantors under this Guaranty, whether or not any legal proceedings are instituted by Landlord, and all costs, attorney's fees and expenses incurred by Landlord in connection with any bankruptcy proceeding or other similar proceeding involving Guarantors which in any way affects Landlord's exercise of any of its rights and remedies under this Guaranty. Guarantors' obligation to reimburse Landlord under this Section shall include payment of interest on all amounts expended by Landlord from the date of expenditure at the rate of ten percent (10%) per annum. Without limiting the terms of this Section, Guarantors agree that Landlord shall be entitled to retain such attorneys as Landlord, in its sole

**EXHIBIT 2**

discretion, may select at such attorneys' customary rates and charges for legal fees, costs and other services, and Landlord shall be entitled to full reimbursement from Guarantors for all such fees, costs and charges, regardless of any schedule, formula or other guideline for attorney's fees, whether described as reasonable or otherwise, which is established, set or adopted pursuant to any governmental requirement or by any trial, appellate, or bankruptcy court or governmental authority.

      20.    Time is strictly of the essence under this Guaranty and any amendment, modification or revision hereof.

      21.    If any Guarantor that is a party hereto or becomes a party hereto is a corporation, (a) each individual executing this Guaranty on behalf of said corporation represents and warrants that he is duly authorized to execute and deliver this Guaranty on behalf of said corporation, in accordance with a duly adopted resolution of the board of directors of said corporation or in accordance with the bylaws of said corporation, and that this Guaranty is binding upon said corporation in accordance with its terms; and (b) Landlord, at its option, may require such Guarantor to concurrently, with the execution of this Guaranty, deliver to Landlord a certified copy of a resolution of the board of directors of said corporation authorizing or ratifying the execution of this Guaranty.

      22.    The term "Landlord" whenever hereinabove used refers to and means any Landlord in the foregoing Lease specifically named and also any assignee of said Landlord, whether by outright assignment or by assignment for security, and also any successor to the interest of said Landlord or of any assignee of such Lease or any part thereof, whether by assignment or otherwise. The term "Tenant" whenever hereinabove used refers to and means Tenant in the foregoing Lease specifically named and also any assignee or subtenant of said Lease and also any successor to the interests of said Tenant, assignee or subtenant of such Lease or any part thereof, whether by assignment, sublease or otherwise.

      23.    Any notice, request, demand, instruction or other communication to be given to any party hereunder shall be in writing and shall be either served personally, or sent by overnight courier, or registered or certified mail, return receipt requested with postage prepaid, and addressed to the party to be notified at the address set forth below, or to such other place as the party to be notified may from time to time designate by at least fifteen (15) days' notice to the notifying party. Any such notice, request, demand, instruction or other communication shall be deemed sufficiently served or given for all purposes hereunder either (a) if personally served, upon such service, (b) if sent by overnight courier, the following Business Day, or (c) if mailed, two (2) Business Days after the time of mailing or on the date of receipt shown on the return receipt, whichever is first:

          To Guarantor:
          Paul Bergsten and Matt Dapore
          c/o Boulder Healthcare LLC
          544 Enterprise Drive
          Lewis Center, Ohio 43035

          With a copy to (which shall not constitute notice)

**EXHIBIT 2**

Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Attn: Daniel J. O'Brien

To Landlord:

Boulder Property Holdings LLC
22 Herrick Drive
Lawrence, NY 11559
Attention: Samuel Goldner

24.     As a further material part of the consideration to Landlord to enter into the Lease with Tenant, Guarantors agree:

24.1     The law of the state in which the Leased Premises are located shall govern all questions with respect to this Guaranty;

24.2     That any suit, action or proceeding arising directly or indirectly from this Guaranty, the Lease or the subject matter thereof shall be litigated only in courts located within the county and state in which the Leased Premises are located;

24.3     Guarantors hereby irrevocably consent to the jurisdiction of any local, state or federal court located within the county and state in which the Leased Premises are located;

24.4     Guarantors hereby waive personal service of any and all process upon it and consents to all such service of process in the manner and at the address set forth in Paragraph 20 above; and

24.5     Without limiting the generality of the foregoing, Guarantors hereby waive and agree not to assert by way of motion, defense or otherwise in any suit, action or proceeding any claim that any Guarantor is not personally subject to the jurisdiction of the above-named courts, that such suits, action or proceeding is brought in an inconvenient forum or that the venue of such action, suit or proceeding is improper.

25.     All undefined capitalized terms used herein shall have the same meaning as set forth in the Lease.

*[Remainder of page intentionally left blank]*

**EXHIBIT 2**

## MASTER LEASE GUARANTY
### SIGNATURE PAGE

IN WITNESS WHEREOF, the parties have executed this Guaranty as of this $\underline{21st}$ day of December, 2018.

GUARANTORS:

Paul Bergsten

_____

Matthew Dapore

## EXHIBIT 2

## MASTER LEASE GUARANTY
## SIGNATURE PAGE

IN WITNESS WHEREOF, the parties have executed this Guaranty as of this <u>21st</u> day of December, 2018.

GUARANTORS:

_____
Paul Bergsten

_____
Matthew Dapore

**EXHIBIT 2**



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: MOTION**
**September 17, 2020 11:36**

By: CHRISTOPHER B. CONGENI 0078160

Confirmation Nbr. 2074580

| | |
|---|---|
| BOULDER HEALTHCARE, LLC, ET AL. | CV 20 937366 |
| vs. | |
| BOULDER FG HOLDINGS, LLC, ET AL. | **Judge:**  JOHN J. RUSSO |

**Pages Filed:**  4

**EXHIBIT 2**

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| BOULDER HEALTHCARE, LLC, et al. | ) | Case No. |
| | ) | |
| *Plaintiffs*, | ) | JUDGE: |
| v. | ) | |
| | ) | |
| BOULDER FG HOLDINGS, LLC, *et al.* | ) | **PLAINTIFFS' MOTION FOR** |
| | ) | **CONSOLIDATION** |
| *Defendants.* | ) | |

Pursuant to Civ.R. 42(A), Plaintiffs, Boulder Healthcare, LLC ("Boulder Healthcare") Hillstone Healthcare, LLC ("Hillstone"), Paul Bergsten ("Bergsten"), and Matthew Dapore ("Dapore") (collectively, "Plaintiffs"), respectfully move this Court for an Order consolidating this case with the case captioned *Euclid Beach SNF Realty, LLC, et al. v. Paul Bergsten, et al.*, Cuyahoga County Court of Common Pleas, Case No. CV-20-931951, which was filed on or about April 17, 2020, and which is currently pending before the Honorable Judge Maureen Clancy ("the Euclid Beach Action").

## I.      INTRODUCTION.

This lawsuit involves claims by Plaintiffs for breach of contract, unjust enrichment, and fraudulent inducement, against Defendants, Boulder FG Holdings, LLC ("Boulder FG"), Boulder Operations Holdings, LLC ("Boulder Operations"), Samuel Goldner ("Goldner") and Ariel Fein ("Fein") (collectively, "Defendants"). Plaintiffs' claims in this action arise from the sale and transfer of shares in Boulder Operations (the "Shares"), a nursing home and assisted living business, from Boulder Healthcare to Boulder FG. The sale was conducted under a certain Unit Purchase Agreement, dated July 1, 2019, between Boulder Healthcare, Boulder FG, Dapore, Bergsten, Goldner and Fein (the "Unit Purchase Agreement"). Plaintiffs allege that during discussions concerning the sale of Boulder Healthcare's Shares in Boulder Operations to Boulder

**EXHIBIT 2**

FG, Boulder FG, Goldner and Fein made material misrepresentations to Plaintiffs and induced Plaintiffs to transfer the Shares and control of Boulder Operations to Boulder FG. Plaintiffs further allege that due to these material misrepresentations by Boulder FG, Goldner and Fein, Plaintiffs made $920,000 in advances to Boulder Operations for emergency operating costs. Plaintiffs allege that Boulder FG has not paid the $1,500,000 purchase price (the "Purchase Price") for the Shares, and that $1,000,000 of the Purchase Price is past due.

Plaintiffs' claims in this litigation involve related claims and many of the same parties as those involved in the Euclid Beach Action. In the Euclid Beach Action, the plaintiff landlords of Boulder Operations ("Plaintiff Landlords") filed suit against Bergsten and Dapore on a certain December 21, 2018 Guaranty executed by Bergsten and Dapore (the "Guaranty") for rent which the Plaintiff Landlords allege to be due from Boulder Operations. Bergsten and Dapore filed a Third-Party Complaint against Goldner and Fine in the Euclid Beach Action on the same Unit Purchase Agreement at issue in this case, alleging that Golder and Fein had breached their agreement to indemnify Bergsten and Dapore for obligations under the Guaranty, and alleging that Golder and Fein fraudulently induced Bergsten and Dapore to enter into the Unit Purchase Agreement.

Bergsten, Dapore, Goldner, and Fein are all already parties to the Euclid Beach Action. The Unit Purchase Agreement and Guaranty are also already at issue in the Euclid Beach Action. Boulder Healthcare, Hillstone, Boulder FG, and Boulder Operations are not yet parties to the Euclid Beach Action, but their interests are already involved in that matter. Bergsten and Dapore hold interests in Boulder Healthcare and Hillstone, while Goldner and Fein hold interests in Boulder FG and Boulder Operations. Boulder FG and Boulder Operations have also been issued subpoenas duces tecum in the Euclid Beach Action related to the Unit Purchase Agreement and

**EXHIBIT 2**

Guaranty. The claims at issue in this action are therefore intertwined with those in the Euclid Beach Action and the full dispute should be brought before the Court in the Euclid Beach Action.

Civ. R. 42(A) states that actions may be consolidated if they involve common questions of law or fact.  The Advisory Committee Notes to Civ.R. 42 state that the "obvious purpose of Rule 42(A) is for the convenience of trial, preventing multiplicity of actions and the savings of costs." The Rule itself states that a court may consolidate in order to avoid "unnecessary costs or delay." *See,* Civil Rule 42(A)(1)(c). Courts traditionally favor consolidation because of the increased efficiency that results.  Indeed, the Ohio Supreme Court has held that "so long as the rights of the parties are adequately protected," the management of cases, including consolidation of such actions, lies within the sound discretion of the trial court.  *Director of Highways v. Kleines*, 38 Ohio St. 2d. 317, 320 (1974).

The consolidation of this action with the Euclid Beach Action will result in a substantial savings of time, expense, and judicial resources given that the claims arise from the same set of facts and involve legal issues germane to both actions. Consolidation does not prejudice any of the Defendants to this action given the pending claims and defenses raised in the Euclid Beach Action. If consolidation does not occur, the parties will undertake duplicate discovery and two separate proceedings will address similar, if not the same, issues of law and fact. Thus, consolidation promotes judicial economy for all involved. Accordingly, consolidation pursuant to Civ.R. 42(A) is proper and necessary for this matter.

Therefore, Plaintiffs respectfully request that this Court consolidate this action with the Euclid Beach Action before the Honorable Judge Maureen Clancy in the Cuyahoga County Court of Common Pleas.

Electronically Filed 09/17/2020 11:36 / / CV 20 937366 / Confirmation Nbr. 2074580 / CLSLP

**EXHIBIT 2**

Respectfully submitted,


/s/ Christopher B. Congeni
Christopher B. Congeni (#0078160)
Matthew R. Duncan (#0076420)
Daniel J. Rudary (#0090482)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH  44308
(330) 253-5060
Fax:  (330) 253-1977
Email:  cbcongeni@bmdllc.com
        mrduncan@bmdllc.com
        djrudary@bmdllc.com
*Counsel for Plaintiffs*


## INSTRUCTIONS FOR SERVICE

Plaintiffs request that the Cuyahoga County Clerk of Courts serve the Defendants at the addresses

listed in the caption of this Motion via certified mail, return receipt requested.


/s/ Christopher B. Congeni
Christopher B. Congeni (#0078160)
*Counsel for Plaintiffs*


4847-8149-3451, v. 1

**EXHIBIT 2**



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**REQUEST FOR SERVICE**
September 17, 2020 11:56

By: CHRISTOPHER B. CONGENI 0078160

Confirmation Nbr. 2074933

BOULDER HEALTHCARE, LLC, ET AL.                    CV 20 937366

vs.

BOULDER FG HOLDINGS, LLC, ET AL.          **Judge:**  JOHN J. RUSSO

**Pages Filed:**  41

## EXHIBIT 2



Common Pleas Court of Cuyahoga County, Ohio
**Nailah K. Byrd, Clerk of Courts**

## INSTRUCTIONS FOR SERVICE

Boulder Healthcare, LLC, et al.
_____
Plaintiff(s)

Vs.

Boulder FG Holdings, LLC
_____
Defendants(s)

Case Number CV-20-937366
_____

Judge: John J. Russo
_____

Date: September 17, 2020
_____

Method of Service Requested:

Certified Mail Service ☑ Ordinary Mail Service ☐ Federal Express Service ☐

Personal Service by the Sheriff of _____ County ____

Residence Service by the Sheriff of _____ County ____

Personal Service By Process Server _____

Residence Service by Process Server _____

Civ.R. 4.7 Waiver Requested _____

Name(s) and Address(es) of Parties to Serve:

Boulder FG Holdings, LLC, c/o U-B Corporation, Registered Agent, 1660 West 2nd Street, Suite 1100, Cleveland, OH  44113

Boulder Operations Holdings, LLC, 10 Eastbourne Drive, Spring Valley, NY  10977

Samuel Goldner, 1251 46th Street, Apt. 1, Brooklyn, NY  11219-2087

Ariel Fein, 10 Eastbourne Drive, Spring Valley, NY  10977

Additional Instructions:

Please serve the Summons, Complaint and Plaintiffs' Motion for Consolidation to the above Defendants

by certified mail, return receipt requested.

Filing Party Name: Christopher B. Congeni     Supreme Court ID if applicable: 0078160
_____                                    _____

Phone Number: (330) 253-5060
_____

_For Use by Sheriff or Process Server Only_

Number of Service Attempts:

Address for Service if Different from address included above: _____

**EXHIBIT 2**



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
September 17, 2020 11:36

By: CHRISTOPHER B. CONGENI 0078160

Confirmation Nbr. 2074580

BOULDER HEALTHCARE, LLC, ET AL.

vs.

BOULDER FG HOLDINGS, LLC, ET AL.

CV 20 937366

**Judge:** JOHN J. RUSSO

**Pages Filed:** 34

## EXHIBIT 2

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| BOULDER HEALTHCARE, LLC<br>c/o ACFB Incorporated, Registered Agent<br>200 Public Square, Ste. 2300<br>Cleveland, OH 44114 | ) ) ) ) ) | CASE NO.<br><br>JUDGE: |
| and | ) ) | |
| HILLSTONE HEALTHCARE, LLC<br>c/o ACFB Incorporated, Registered Agent<br>200 Public Square, Ste. 2300<br>Cleveland, OH 44114 | ) ) ) ) ) | **COMPLAINT (BREACH OF CONTRACT;<br>UNJUST ENRICHMENT; FRAUDULENT<br>INDUCEMENT)** |
| and | ) ) | |
| PAUL BERGSTEN<br>544 Enterprise Drive<br>Lewis Center, OH 43035 | ) ) ) ) | **(JURY DEMAND ENDORSED HEREON)** |
| And | ) ) | |
| MATTHEW DAPORE<br>544 Enterprise Drive<br>Lewis Center, OH 43035 | ) ) ) ) | |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) ) | |
| BOULDER FG HOLDINGS, LLC<br>c/o U-B Corporation, Registered Agent<br>1660 West 2nd Street, Suite 1100<br>Cleveland, OH 44113 | ) ) ) ) ) | |
| and | ) ) | |
| BOULDER  OPERATIONS  HOLDINGS,<br>LLC<br>10 Eastbourne Drive<br>Spring Valley, NY  10977 | ) ) ) ) ) | |
| and | ) ) | |

**EXHIBIT 2**

SAMUEL GOLDNER
1251 46th Street Apt. 1
Brooklyn, NY  11219-2087

and

ARIEL FEIN
10 Eastbourne Drive
Spring Valley, NY  10977

    *Defendants.*

  Plaintiffs, Boulder Healthcare, LLC ("Boulder Healthcare") Hillstone Healthcare, LLC ("Hillstone"), Paul Bergsten ("Bergsten"), and Matthew Dapore ("Dapore") (collectively, "Plaintiffs"), for their Complaint against Defendants, Boulder FG Holdings, LLC ("Boulder FG"), Boulder Operations Holdings, LLC ("Boulder Operations"), Samuel Goldner ("Goldner") and Ariel Fein ("Fein") (collectively, "Defendants") state as follows:

<div align="center"><strong><u>PARTIES, JURISDICTION AND VENUE</u></strong></div>

  1.  Boulder Healthcare is an Ohio limited liability company.

  2.  Hillstone is a Delaware limited liability company which does business in Ohio.

  3.  Bergsten is a resident of Ohio and holds ownership interests in Hillstone and Boulder Healthcare.

  4.  Dapore is a resident of Ohio and holds ownership interests in Hillstone and Boulder Healthcare.

  5.  Boulder FG is an Ohio limited liability company.

  6.  Boulder Operations is a Delaware limited liability company which does business in Ohio.

  7.  Goldner and Fein are individuals residing in the State of New York, who, at all times material hereto, held ownership interests in the members of Boulder FG.

<div align="center"><strong>EXHIBIT 2</strong></div>

8.    This Court has subject matter jurisdiction over this action pursuant to Ohio Rev. Code §2305.01.

9.    This Court has personal jurisdiction over Defendant pursuant to Ohio Rev. Code §2307.382.

10.    Venue is proper before this Court pursuant to Ohio Civ. R. 3(C)(1), (2), (3), and (6).

## FACTUAL BACKGROUND

11.    Boulder Healthcare and Boulder FG are parties to a certain Limited Liability Company Agreement, dated December 21, 2018 (the "LLC Agreement") for Boulder Operations.

12.    Boulder Operations operates nursing home and assisted living facilities in the State of Ohio.

13.    Pursuant to the LLC Agreement, Boulder Healthcare was the owner of 50 units of Boulder Operations, which represented 50% of the outstanding equity of Boulder Operations.

14.    Pursuant to the LLC Agreement, Boulder FG was the owner of the other 50 units of Boulder Operations, which represented the other 50% of the outstanding equity of Boulder Operations.

15.    In June 2019, Boulder Operations was unable to meet payroll and other expenses.

16.    In June 2019, Boulder Healthcare and Boulder FG, together with Hillstone, Dapore, Bergsten, Goldner, Fein, and Boulder Healthcare Management, LLC, an Ohio limited liability company ("Boulder Healthcare Management") entered into discussions concerning Boulder Healthcare potentially selling its 50 units of Boulder Operations to Boulder FG.

17.    Boulder FG, by and through its agents, Goldner and Fein, represented to Boulder Healthcare and Hillstone, by and through their agents, Dapore and Bergsten, that Boulder FG

**EXHIBIT 2**

would purchase Boulder Healthcare's shares in Boulder Operations if Hillstone, Boulder Healthcare, Dapore and/or Bergsten paid money into Boulder Operations for purposes of Boulder Operations making payroll and other expenses.

18.     In reliance upon the representations of Boulder FG, by and through its agents, Goldner and Fein, Hillstone Healthcare paid $620,000 into Boulder Operations on June 6, 2019 and paid $150,000 into Boulder Operations on June 7, 2019, and Bergsten paid $150,000 into Boulder Operations on June 10, 2019 (collectively, the "Advanced Payments"). True and correct copies of checks reflecting these Advanced Payments are attached hereto as Exhibit "1" and are incorporated by reference herein.

19.     On July 1, 2019, Boulder Healthcare and Boulder FG, together with Dapore, Bergsten, Goldner, Fein, and Boulder Healthcare Management entered into a certain Unit Purchase Agreement (the "Unit Purchase Agreement"), a true and correct copy of which is attached hereto as Exhibit "2" and incorporated by reference herein.

20.     Under the terms of Section 2 of the Unit Purchase Agreement, Boulder Healthcare agreed to sell its 50 units of Boulder Operations (the "Transferred Shares") to Boulder FG for the total purchase price of $1,500,000.00 (the "Purchase Price").

21.     Under the terms of Section 2 of the Unit Purchase Agreement, Boulder FG agreed to pay the Purchase Price to Boulder Operations in three installments of $500,000 each, due on or prior to October 2, 2019, July 1, 2020, and July 1, 2021.

22.     As of the date of this Complaint, Boulder FG has not paid any portion of the Purchase Price to Boulder Healthcare for the Transferred Shares.

Electronically Filed 09/17/2020 11:36 / / CV 20 937366 / Confirmation Nbr. 2074580 / CLSLP
Electronically Filed 09/17/2020 11:36 / SERVICE / CV 20 937366 / Confirmation Nbr. 2074933 / CLAHJ
4

**EXHIBIT 2**

23.     Boulder FG is past due on its payment of $500,000 due on or prior to October 2, 2019 and on its payment of $500,000 due on or prior to July 1, 2020, under the Unit Purchase Agreement.

## COUNT ONE

### (Breach of Contract – Boulder Healthcare v. Boulder FG)

24.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if fully stated herein.

25.     Under the terms of the Unit Purchase Agreement, including but not limited to Section 2, titled, "Purchase and Sale," Boulder Healthcare agreed to sell, and Boulder FG agreed to purchase, the Transferred Shares for the Purchase Price, to be paid in three installments of $500,000 each, due on or prior to October 2, 2019, July 1, 2020, and July 1, 2021.

26.     Boulder Healthcare has fully performed all of its obligations under the Unit Purchase Agreement, including but not limited to, transferring the Transferred Shares and control of Boulder Operations to Boulder FG.

27.     Boulder FG has breached the Unit Purchase Agreement, including, but not limited to Section 2 of the Unit Purchase Agreement, by refusing to pay the Purchase Price for the Transferred Shares.

28.     Boulder FG has breached the Unit Purchase Agreement by not making the first payment of $500,000 to Boulder Healthcare on or prior to October 2, 2019, as required by the Unit Purchase Agreement.

29.     Boulder FG has breached the Unit Purchase Agreement by not making the second payment of $500,000 to Boulder Healthcare on or prior to July 1, 2020, as required by the Unit Purchase Agreement.

30.     Boulder Healthcare has made demand upon Boulder FG to pay the 2 past-due installments of the Purchase Price, including but not limited to in a October 31, 2019 letter from then-Boulder Healthcare's counsel to then-Boulder FG's counsel, a true and correct copy of which is attached hereto as <u>Exhibit "3"</u> and incorporated by reference herein.

31.     Boulder FG has refused to pay the past-due installments of the Purchase Price and the first $1,000,000 of the Purchase Price remains outstanding.

32.     As a result of Boulder FG's breaches of the Unit Purchase Agreement, Boulder Healthcare has been damaged in an amount not presently known, but which is believed to be in excess of $1,000,000, together with interest from on and after October 2, 2019, costs and reasonable attorneys' fees.

## <u>COUNT TWO</u>

### **(Unjust Enrichment – Boulder Healthcare v. Boulder FG)**

33.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if fully stated herein.

34.     As a result of Boulder Healthcare transferring the Transferred Shares and control of Boulder Operations to Boulder FG, for which Boulder Healthcare has not been paid, Boulder Healthcare has conferred a benefit upon Boulder FG, which was knowingly received by Boulder FG, and retention of that benefit by Boulder FG would be unjust under the circumstances.

35.     Boulder FG has been unjustly enriched in an amount not presently known, but which is believed to be in excess of $1,000,000, together with interest from on and after October 2, 2019, as a result of transferring the Transferred Shares and control of Boulder Operations.

Electronically Filed 09/17/2020 11:36 / / CV 20 937366 / Confirmation Nbr. 2074580 / CLSLP
Electronically Filed 09/17/2020 11:56 / SERVICE / CV 20 937366 / Confirmation Nbr. 2074953 / CLAHJ
6

**EXHIBIT 2**

36.     Boulder Healthcare has been damaged by Boulder FG's unjust enrichment in an amount not presently known, but which is believed to be in excess of $1,000,000, together with interest from on and after October 2, 2019, costs and reasonable attorneys' fees.

## COUNT THREE

### (Unjust Enrichment – Plaintiffs v. Defendants)

37.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if fully stated herein.

38.     As a result of Plaintiffs, personally and/or by and through their membership or ownership interests, paying the Advanced Payments totaling $920,000 to Boulder Operations in reliance upon Defendants' representations that they would purchase the Transferred Shares from Boulder Healthcare, for which Plaintiffs have not been paid, Plaintiffs conferred a benefit upon Defendants, which was knowingly received by Defendants, and retention of that benefit by Defendants would be unjust under the circumstances.

39.     Defendants have been unjustly enriched in an amount not presently known, but which is believed to be in excess of $920,000, together with interest from on and after June 6, 2019, as a result of the Advanced Payments.

40.     Plaintiffs have been damaged by Defendants' unjust enrichment in an amount not presently known, but which is believed to be in excess of $920,000, together with interest from on and after June 6, 2019, costs and reasonable attorneys' fees.

## COUNT FOUR

### (Fraudulent Inducement – Plaintiffs v. Boulder FG, Goldner, and Fein)

41.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if fully stated herein.

Electronically Filed 09/17/2020 11:36 / / CV 20 937366 / Confirmation Nbr. 2074580 / CLSLP
Electronically Filed 09/17/2020 11:36 / SERVICE / CV 20 937366 / Confirmation Nbr. 2074933 / CLAHJ

7

EXHIBIT 2

42.     Boulder FG, by and through its agents, Goldner and Fein, falsely represented to Boulder Healthcare and Hillstone, by and through their agents, Bergsten and Dapore, that Boulder FG would pay the Purchase Price to Boulder Healthcare in exchange for the Transferred Shares and control of Boulder Operations.

43.     Boulder FG, by and through its agents, Golder and Fein, falsely represented to Boulder Healthcare and Hillstone, by and through their agents, Bergsten and Dapore, that Golder and Fein would indemnify Bergsten and Dapore for liabilities under a certain Guaranty executed by Bergsten and Dapore on December 21, 2018 (the "Guaranty") if Boulder Healthcare sold the Transferred Shares to Boulder FG and transferred the Transferred Shares and control of Boulder Operations to Boulder FG. A copy of the Guaranty is attached hereto as Exhibit "4" and incorporated by reference herein.

44.     Boulder FG, by and through its agents, Goldner and Fein, represented to Boulder Healthcare and Hillstone, by and through their agents, Dapore and Bergsten, that Boulder FG would purchase Boulder Healthcare's shares in Boulder Operations if Hillstone, Boulder Healthcare, Dapore and/or Bergsten paid the Advanced Payments for purposes of Boulder Operations making payroll and other expenses.

45.     Said representations of Boulder FG's agents, Goldner and Fein, were made to Boulder Healthcare's and Hillstone's agents, Bergsten and Dapore, in meetings and through written and/or verbal communications from on or about June 2019 through July 2019.

46.     Boulder FG, Goldner and Fein knew their representations to Plaintiffs were false when they made them.

Electronically Filed 09/17/2020 11:36 / CV 20 937366 / Confirmation Nbr. 2074580 / CLSLP
Electronically Filed 09/17/2020 11:36 / SERVICE / CV 20 937366 / Confirmation Nbr. 2074933 / CLAHJ
8

**EXHIBIT 2**

47. Boulder FG's, Goldner's and Fein's false representations were material to Boulder Healthcare, Bergsten and Dapore entering into the Unit Purchase Agreement and to Boulder Healthcare transferring the Transferred Shares and control of Boulder Operations to Boulder FG.

48. Boulder FG's, Goldner's and Fein's false representations were material to Plaintiffs, personally and/or by and through their membership or ownership interests, paying the Advanced Payments totaling $920,000 to Boulder Operations.

49. Boulder FG, Goldner and Fein intended to induce Plaintiffs into relying on their false representations so that Plaintiffs would enter into the Unit Purchase Agreement, would transfer the Transferred Shares and control of Boulder Operations to Boulder FG, and would pay the Advanced Payments.

50. Plaintiffs justifiably relied upon Boulder FG's, Goldner's and Fein's false representations.

51. Plaintiffs have suffered injury proximately caused by their reliance on Boulder FG's, Goldner's and Fein's false representations.

52. As a result of Boulder FG's, Goldner's and Fein's fraudulent inducement, Plaintiffs have been damaged in an amount not presently known, but which is believed to be in excess of $1,920,000, together with interest from on and after June 6, 2019, punitive damages, costs and reasonable attorneys' fees.

**WHEREFORE**, Plaintiffs, Boulder Healthcare, LLC, Hillstone Healthcare, LLC, Boulder Operations Holdings, LLC, Paul Bergsten and Matthew Dapore, demand judgment against Defendants, Boulder FG Holdings, LLC, Boulder Operations Holdings, LLC, Samuel Goldner, and Ariel Fein, as follows: (1) on Counts I and II, against Boulder FG Holdings, LLC, in an amount not presently known, but which is believed to be in excess of $1,000,000, together with interest

**EXHIBIT 2**

from on and after October 2, 2019, costs and reasonable attorneys' fees; (2) on Count III, jointly and severally against Boulder FG Holdings, LLC, Boulder Operations Holdings, LLC, Samuel Goldner and Ariel Fein in an amount not presently known, but which is believed to be in excess of $920,000, together with interest from on and after June 6, 2019, costs and reasonable attorneys' fees; (3) on Count IV, jointly and severally against Boulder FG Holdings, LLC, Samuel Goldner and Ariel Fein in an amount not presently known, but which is believed to be in excess of $1,920,000, together with punitive damages, interest from on and after June 6, 2019, costs and reasonable attorneys' fees; and (4) and for such other relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Christopher B. Congeni*
Christopher B. Congeni (#0078160)
Matthew R. Duncan (#0076420)
Daniel J. Rudary (#0090482)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH  44308
(330) 253-5060
Fax:  (330) 253-1977
Email:  cbcongeni@bmdllc.com
          mrduncan@bmdllc.com
          djrudary@bmdllc.com
*Counsel for Plaintiffs*

### JURY DEMAND

Pursuant to Ohio Rule of Civil Procedure 38(B), Plaintiffs hereby demand a trial by jury on all issues herein.

*/s/ Christopher B. Congeni*
Christopher B. Congeni (#0078160)
*Counsel for Plaintiffs*

**EXHIBIT 2**

**INSTRUCTIONS FOR SERVICE**

Plaintiffs request that the Cuyahoga County Clerk of Courts serve the Defendants at the addresses listed in the caption of this pleading via certified mail, return receipt requested.

*/s/ Christopher B. Congeni*
Christopher B. Congeni (#0078160)
*Counsel for Plaintiffs*

4845-1283-9115, v. 2

**EXHIBIT 2**

## Authentication Required ✕

10Jun ↙ check # 2017
Check $150,000.00

ading your checks..

Date
Monday, June 10, 2019

Online Description
CHECK # 2017Edit

Check Number
00000002017

Amount of the Check
$150,000.00

How this will appear on your statement
CHECK # 2017



**EXHIBIT 2**

EXHIBIT
1

FOR DEPOSIT ONLY

ENDORSE HERE

☐ CHECK BOX FOR MOBILE/REMOTE DEPOSIT

WRITE NAME OF BANK IN THIS PLACE PLEASE

>>031306278<<

6/10/2019
15:06:23
MALTH
TMID 3437161195430380

**EXHIBIT 2**

Print This Page                         Close Check Viewer



**EXHIBIT 2**

Print This Page                    Close Check Viewer



**EXHIBIT 2**

## UNIT PURCHASE AGREEMENT

THIS UNIT PURCHASE AGREEMENT (this "Agreement"), is made and entered into as of July 1, 2019 by and among BOULDER HEALTHCARE LLC, an Ohio limited liability company ("Seller"), BOULDER FG HOLDINGS LLC, an Ohio limited liability company ("Purchaser"), MATTHEW DAPORE, an individual ("Dapore"), PAUL BERGSTEN, an individual ("Bergsten"), SAMUEL GOLDNER, an individual ("Goldner"), ARIEL FEIN, an individual ("Fein"), and BOULDER HEALTHCARE MANAGEMENT LLC, an Ohio limited liability company (the "Management Company").

## RECITALS

A.     Seller is the owner of 50 Units of Boulder Operations Holdings LLC, a Delaware limited liability company (the "Company"), which represents 50% of the outstanding equity of the Company.  Purchaser is the owner of 50 Units of the Company, which represents 50% of the outstanding equity of the Company.  The Units of the Company are uncertificated.

B.     Seller desires to sell to Purchaser and Purchaser desires to purchase from Seller all of the Units of the Company owned by Seller (the "Transferred Units"), pursuant to the terms and conditions contained in this Agreement.

C.     Dapore and Bergsten are the only members of Seller and affiliates of Goldner and Fein are the only members of Purchaser.

D.     Seller and Purchaser are parties to the Limited Liability Company Agreement of the Company dated as of December 21, 2018 (the "LLC Agreement").

E.     The Company, as Tenant, and certain entities, as Landlord, are parties to that certain Master Lease dated as of December 21, 2018 (the "Lease").

F.     Dapore and Bergsten have guaranteed certain obligations under the Lease pursuant to a Guaranty of Lease dated as of December 21, 2018 (the "Guaranty").

G.     The Management Company is the manager of the facilities covered under the Lease, pursuant to management agreements, each dated as of December 21, 2018, between the Management Company and each facility operator, including any side letter executed in connection therewith (the "Management Agreements").

H.     Seller and Purchaser, together with certain other parties, are party to that certain pledge agreement dated as of December 21, 2018, made in favor of White Oak Healthcare Finance, LLC (the "Pledge Agreement").

I.     Seller previously funded at least $1,000,000.00 of cash to the Company or its subsidiaries (the "Seller Capital").



**EXHIBIT 2**

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  <u>Recitals</u>. The Recitals hereto are an integral part of this Agreement and are hereby incorporated herein by reference and are made a part hereof.

2.  <u>Purchase and Sale</u>.

    (a)  <u>Sale</u>. Subject to the terms and conditions herein set forth, Seller hereby agrees to sell to Purchaser the Transferred Units and Purchaser agrees to purchase from Seller the Transferred Units.

    (b)  <u>Purchase Price</u>. The aggregate purchase price for the Transferred Units is $1,500,000.00 (the "Purchase Price"). The Purchase Price shall be payable as follows: (a) $500,000 shall be payable by wire transfer of immediately available funds on or prior to October 2, 2019; (b) $500,000 shall be payable by wire transfer of immediately available funds on or prior to July 1, 2020; and (c) $500,000 shall be payable to Seller by wire transfer of immediately available funds on or prior to July 1, 2021.

3.  <u>Closing; Closing Deliveries</u>.

    (a)  <u>Time, Date and Place of Closing</u>. The closing of the transactions contemplated by this Agreement (the "Closing") shall take place concurrently with the execution of this Agreement (the "Closing Date"), effective as of 12:01 am on the Closing Date (the "Effective Time").

    (b)  <u>Deliveries at Closing</u>. At Closing, Seller shall deliver to Purchaser an equity power, in substantially the form attached hereto as <u>Exhibit A</u>, evidencing the transfer of the Transferred Units to Purchaser. Effective upon Closing: (i) Seller shall cease to be a Member of the Company, and Seller shall not be entitled to any distributions, indemnification rights, or any other rights as a member of the Company, whether or not such rights relate to a period arising prior to the date hereof, and Seller's sole rights shall be those rights expressly set forth herein; (ii) Fein, Goldner and the Company automatically release Seller, the Management Company, Bergsten and Dapore from any and all Losses based upon, resulting from, or arising out of the LLC Agreement and/or the Management Agreements, except to the extent that any such Losses (A) are the result of fraud, willful misconduct, misappropriation of funds, co-mingling of funds or Bad Boy Acts (as defined herein) or (B) are indemnifiable Losses under this Agreement; and (iii) Seller, the Management Company, Bergsten and Dapore automatically release Fein, Goldner and the Company from any and all Losses based upon, resulting from, or arising out of the LLC Agreement and/or the Management Agreements, except to the extent that any such Losses (A) are the result of fraud, willful misconduct, misappropriation of funds, co-mingling of funds or Bad Boy Acts (as defined herein) or (B) are indemnifiable Losses under this Agreement.

4.  <u>Representations, Warranties and Covenants of Seller</u>. In order to induce Purchaser to purchase from Seller the Transferred Units and enter into this Agreement, Seller hereby makes the following representations, warranties and covenants to Purchaser:

**EXHIBIT 2**

(a)    Capacity.  Seller has all requisite limited liability company power and authority to execute and deliver, and perform all of Seller's obligations under this Agreement.

(b)    Due Execution; Validity of Agreement.  This Agreement has been duly authorized, executed and delivered by Seller, and (assuming due execution and delivery hereof by Purchaser) constitutes the valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

(c)    Ownership; Title.  Seller is the owner, beneficially and of record, of all of the Transferred Units, free and clear of all liens, encumbrances, security interests, pledges, claims, or restrictions of any kind ("Lien"), other than as set forth in the LLC Agreement and/or the Pledge Agreement, and no other person, firm or entity has any interest whatsoever in the Transferred Units.  The Transferred Units represent all of the equity interest owned by Seller in the Company and Seller has no right, title or interest in any other equity interest in the Company.  Seller has not previously sold, transferred or conveyed, at any time, all or any part of the Transferred Units to any other individual or entity.

(d)    Agreement Not in Breach of Other Instruments; Governmental Consent. The execution and delivery by Seller of this Agreement and the consummation by Seller of the transactions provided for herein (i) will not result in a breach of any of the terms and provisions of any judgment, decree, order, or award of any court, governmental body, or arbitrator; (ii) do not require the consent of any governmental authority or other entity or person that have not been obtained, except as may otherwise be set forth in the Pledge Agreement; and (iii) will not result in the creation of any Lien on any of the Transferred Units.

5.    Representations, Warranties and Covenants of Purchaser.  In order to induce Seller to sell the Transferred Units to Purchaser and enter into this Agreement, Purchaser hereby makes the following representations, warranties and covenants to Seller:

(a)    Capacity.  Purchaser has full legal power and capacity to execute and deliver, and perform all of Purchaser's obligations under, this Agreement.

(b)    Due Execution; Validity of Agreement.  This Agreement has been duly executed and delivered by Purchaser and (assuming due execution and delivery hereof by Seller), constitutes the valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms.

(c)    Agreement Not in Breach of Other Instruments; Governmental Consent. The execution and delivery by Purchaser of this Agreement and the consummation by Purchaser of the transactions provided for herein (i) will not result in a breach of any of the terms and provisions of any judgment, decree, order, or award of any court, governmental body, or arbitrator, or any applicable law, rule or regulation; and (ii) do not require the consent of any governmental authority or other entity or person that have not been obtained.

6.    Indemnification of Guarantors.  The Guaranty will remain in place, without modification, following the consummation of the transactions contemplated by this Agreement.

**EXHIBIT 2**

As consideration therefore, Goldner and Fein, on a joint and several basis (the "Guaranty Indemnitors"), hereby agree to indemnify Dapore and Bergsten (each, a "Guarantor" and collectively, the "Guarantors") from any claims, liabilities, losses, damages, costs and expenses, including without limitation reasonable attorneys' fees ("Losses"), based upon, resulting from, or arising out of the Guaranty: (a) for a period of ten years from the date of the Lease (the "Covered Period"), for any Loss associated with a breach of the Obligations (as defined in the Guaranty) by the Company or its affiliates after the Closing Date that pertains to or is related to (i) a reporting obligation or notice obligation; (ii) fraud, willful misconduct, misappropriation of funds or co-mingling of funds by the Company or its affiliates; or (iii) arising under Section 1(a) – 1(i) of the Guaranty (collectively with items (i)-(ii), disregarding the qualification immediately following this definition, "Bad Boy Acts"), but only to the extent such Losses are related to the operation of the Facility on or after the Effective Time; and (b) after expiration of the Covered Period, for all Losses under the Guaranty. For the avoidance of doubt, the Guaranty Indemnitors are not responsible for indemnifying the Guarantors for any Losses incurred by the Guarantors under the Guaranty for any actions or inactions taken by the Company, the Guarantors or their affiliates prior to the Closing Date, regardless of the fact that Landlord seeks enforcement under the Guaranty after the Closing Date. In addition, the Guaranty Indemnitors covenant not to request, directly or indirectly, that Landlord's lender declare any event of default under Landlord's or the Company's loan documents in an effort to cause an Event of Default under the Lease.

7.    **Indemnification of Purchaser, the Company and Guaranty Indemnitors**.    The Guarantors, on a joint and several basis, hereby agree to indemnify Purchaser, the Company, the Guaranty Indemnitors and their affiliates (the "Purchaser Parties") for (i) any Losses incurred by or asserted against the Purchaser Parties for any claim against the Purchaser Parties in connection with the operation of the Company and its affiliates (including breach of the Obligations by the Company, as tenant, or its affiliates) prior to the Closing Date to the extent such claim pertains to, is related to or is a result of any Bad Boy Acts by Seller, the Company, the Guarantors or their affiliates; and (ii) 50% of any Losses arising out of any recoupment claim made against the Company or its affiliates by a local, state or federal governmental entity or program relating to the period of time from December 21, 2018 through June 30, 2019 (each, a "Government Claim"), unless such Government Claim is a result of a Bad Boy Act by Seller and its affiliates (including the Company, Dapore or Bergsten) prior to the Closing Date, in which case Seller and the Guarantors shall be solely liable for such Losses and shall indemnify the Purchaser Parties for all such Losses. For the avoidance of doubt, the Guarantors shall not have any obligation to the indemnify the Purchaser Parties for any Losses arising from third party claims related to the Company's (or its affiliates') failure to pay such third party for goods and/or services rendered by such third party to the Company and/or its affiliates, so long as such third party claim is not the result of any Bad Boy Act by Seller, the Company, the Guarantors or their affiliates.

8.    **Offset Rights**.    Any indemnification obligation or other liability of Seller, Dapore or Bergsten under this Agreement may be satisfied, discharged or paid by off-set against payment of the Purchase Price due and owing pursuant to Section 2(b) or Guaranty Indemnitors' indemnification obligations pursuant to Section 6.

9.    **Resignation; Appointment**.    As of the Effective Time, Dapore and Bergsten shall be deemed to have resigned from all offices and positions they hold, of any nature, with the

**EXHIBIT 2**

Company and any of its affiliates, including without limitation as an officer, director, manager or employee (other than, for the avoidance of doubt, the Management Company) without any further action necessary on the part of any party. Such resignations will be deemed accepted by the Company and its affiliates as of the Effective Time.

10. <u>Termination of Management Agreements</u>. Each Management Agreement will be deemed terminated and of no further force and effect (other than terms that survive the termination of the agreement) effective as of the Effective Time, without any further action necessary on the part of any party. As of the Effective Time, the Management Company shall have no right to any further payments of any amounts under the Management Agreements.

11. <u>Miscellaneous</u>.

(a) <u>Expenses</u>. Each party hereto shall be responsible for the payment of any fees, costs or expenses incurred by such party in connection with the transactions contemplated by this Agreement.

(b) <u>Further Assurances</u>. Each of the parties agrees to cooperate in the effectuation of the transactions contemplated under this Agreement and to execute any and all additional documents and to take such additional action as is reasonably necessary or appropriate for such purposes.

(c) <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio without giving effect to conflicts of law principles.

(d) <u>Headings</u>. Section and caption headings are not to be considered part of this Agreement. They are included solely for convenience and are not intended to be full and accurate descriptions of the contents of this Agreement.

(e) <u>Amendments</u>. This Agreement may be amended or modified only in a writing executed by the parties to this Agreement.

(f) <u>Binding Effect</u>. This Agreement shall bind and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

(g) <u>Entire Agreement</u>. This Agreement, together with the other documents and instruments executed in connection herewith, constitute the entire understanding among the parties and supersedes any prior understandings and agreements between them respecting the within subject matter. There are no representations, agreements, arrangements or understandings, oral or written, between or among the parties with respect to the within subject matter, other than as set forth in this Agreement.

(h) <u>Severability</u>. If any provisions of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless continue in full force and effect without being impaired or invalidated in any way and shall be construed in accordance with the purposes and tenor and effect of this Agreement.

Electronically Filed 06/22/2020 09:21 / ANSWERS / CV 20 931951 / Confirmation Nbr. 2017463 / CLJSZ
Electronically Filed 09/17/2020 11:36 / SER / CV 20 937390 / Confirmation Nbr. 2074580 / CLAHJ

EXHIBIT 2

      (i)    <u>Construction</u>.  The rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement, or any amendments, schedules or exhibits to this Agreement.

      (j)    <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same Agreement.  The signature of any party to any counterpart, including any facsimile or .pdf thereof, may be appended to any other counterpart and, when so appended, shall constitute one and the same Agreement.

      (k)    <u>Non-Disparagement</u>. Each of Bergsten, Dapore, Fein and Goldner agree not to make any oral or written statement about any of the other parties to this Agreement which is intended or reasonably likely to disparage the other party, or otherwise degrade the other party's reputation in the business community.

<center>[Remainder of Page Intentionally Left Blank]</center>

<center>**EXHIBIT 2**</center>

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

**SELLER:**

**BOULDER HEALTHCARE LLC**

By:_____
    Name: Paul Bergsten
    Title:  CEO

**PURCHASER:**

**BOULDER FG HOLDINGS LLC**

By:_____
    Name:
    Title:

**GUARANTORS:**

_____
Matthew Dapore

_____
Paul Bergsten

**GUARANTY INDEMNITORS:**

_____
Samuel Goldner

_____
Ariel Fein

For purposes of Section 10:

**BOULDER HEALTHCARE MANAGEMENT LLC**

By:_____
Name:  Paul Bergsten
Title:  CEO

Electronically Filed 06/22/2020 09:21 / [Signature Page to Asset Purchase Agreement] 7463 / CLJSZ
Electronically Filed 09/17/2020 11:36 / SER / CV 20 937306 / Confirmation Nbr. 2074580 / CLDBB3 / CLAHJ

**EXHIBIT 2**

## Exhibit A

## IRREVOCABLE POWER TO TRANSFER EQUITY INTEREST

FOR VALUE RECEIVED, the undersigned, BOULDER HEALTHCARE LLC, an Ohio limited liability company: (a) hereby sells, assigns and transfers unto BOULDER FG HOLDINGS LLC, an Ohio limited liability company, Fifty (50) Units of BOULDER OPERATIONS HOLDINGS LLC, a Delaware limited liability company (the "Company"), standing in the undersigned's name on the books of the Company; and (b) does hereby irrevocably constitute and appoint _____ as attorney-in-fact to transfer said shares on the books of the Company with full power of substitution in the premises.

Dated: _____, 2019                    BOULDER HEALTHCARE LLC


By:_____
   Name:  Paul Bergsten
   Title:   CEO

2

## EXHIBIT 2



**Benesch**
Attorneys at Law

Daniel J. O'Brien
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Direct Dial: 216.363.4691
Fax: 216.363.4588
dobrien@beneschlaw.com

October 31, 2019

Daniel A. Gottesman
Ulmer & Berne LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113

      Re:    Unit Purchase Agreement dated July 1, 2009 (the "Unit Purchase Agreement")

Dear Danny:

      This letter is written to follow up on my email correspondence to you on October 10, 2019, with respect to the Unit Purchase Agreement. Your client has still not made the $500,000 payment that was due to my client on October 2, 2019, pursuant to Section 2 of the Unit Purchase Agreement. We understand that your client believes that it is entitled to offset for unspecified breaches under the lease guaranty. To date, and despite repeated requests, we have not received any information with respect to the nature or extent of these alleged breaches. Please pay the $500,000 ASAP, or provide detailed information with respect to the alleged breaches so that we can review and respond.

      Note that my client is not waiving any rights or remedies with respect to your client's failure to pay the $500,000 that is now past due.

      Sincerely,

      BENESCH, FRIEDLANDER,
         COPLAN & ARONOFF LLP

      *Daniel J. O'Brien*

      Daniel J. O'Brien

www.beneschlaw.com

**EXHIBIT**
**3**
tobbies'

**EXHIBIT 2**

## GUARANTY OF LEASE

THIS GUARANTY OF LEASE (this "Guaranty") is made by Paul Bergsten and Matthew Dapore (referred to herein individually as, a "Guarantor", and collectively as, "Guarantors") in favor of the entities set forth on Schedule 1 attached hereto and made a part hereof (collectively, "Landlord"), in connection with that certain Master Lease, dated as of December 20, 2018 (the "Lease"), pursuant to which Landlord leases to Boulder Operations Holdings LLC, a Delaware limited liability company ("Tenant"), the "Leased Premises" as defined in the Lease. As a material inducement to and in consideration of Landlord entering into the Lease, Landlord having indicated that it would not enter into the Lease without the execution of this Guaranty, Guarantors do hereby agree with Landlord as follows:

1.      Guarantors do hereby, jointly and severally, unconditionally and irrevocably guarantee to Landlord, as a primary obligor and not as a surety, (a) the full and punctual payment of all rents and other sums payable by Tenant under the Lease, and (b) the full and punctual performance and observance of all terms, covenants and conditions on the part of Tenant to be performed and observed under the Lease (all such terms, covenants, conditions, agreements, and obligations being herein collectively referred to as the "Tenant Obligations"); provided, however, that any obligations of Tenant arising exclusively from a Landlord Loan Default or arising out of the termination of the Lease pursuant to Sections 17.1 (o)(ii), (p), (u), or (v) of the Lease (collectively, the "Non-Guaranteed Obligations") shall not be deemed to be Tenant Obligations hereunder. Guarantors further agree to indemnify and hold Landlord harmless from any loss, liability, damage or expense (including reasonable attorney's fees) arising from the failure of Tenant to perform any of the Tenant Obligations and/or the enforcement of this Guaranty (the "Indemnification Obligations" and, collectively with the Tenant Obligations, the "Obligations"). Upon an Event of Default by Tenant under the Lease, after applicable grace periods, Guarantors shall pay or perform the Tenant Obligations so in default, as applicable; provided, however, that, except as otherwise set forth herein, under no circumstances shall Guarantors be required to pay more than an aggregate amount equal to Sixteen Million Dollars ($16,000,000) with respect to the Tenant Obligations; provided further, that, except as otherwise set forth herein, under no circumstance shall Guarantors be required to pay more than an aggregate amount equal to Eight Million Dollars ($8,000,000) with respect to Tenant Obligations arising out of (i) any Event of Default pursuant to Section 17.1(i), (j), (k), (n), (o)(i), (q), or (w) of the Lease, so long as such Event of Default is not also an Event of Default under any other subparagraph of Section 17.1 of the Lease, or (ii) any Event of Default pursuant to Sections 17.1(b) or (m) of the Lease which solely relates to a breach of any financial covenant contained in the Lease or a breach with respect to the clinical operations of the Facilities (including, without limitation the covenants contained in Section 19.1(p) of the Lease), so long as such Event of Default is not also an Event of Default under any other subparagraph of Section 17.1, in which event such Event of Default shall be subject to the limitations set forth herein with respect to such other subparagraph of Section 17.1, if any. Notwithstanding the foregoing, it is expressly understood and agreed that the aforesaid limitations on liability shall in no way affect or apply to Guarantors' continued unlimited personal liability for the payment to Landlord of:

Electronically Filed 04/17/2020 15:49 / OTHER / CV 20 931951 / Confirmation Nbr. 1986479 / CLCKD
Electronically Filed 09/17/2020 11:36 / ____ / CV 20 937000 Confirmation Nbr. 2074589 / CLAHJ

EXHIBIT
4

**EXHIBIT 2**

(a) any rents, issues, profits and/or income collected by Tenant or any Subtenant in excess of normal and verifiable operating expenses from any Facility after the occurrence of an Event of Default hereunder or under the Lease;

(b) any rent, issues, profits and/or income from any Facility which have been prepaid more than thirty (30) days in advance;

(c) to the extent that sufficient revenues are generated from the Facilities, payments of taxes, installments of assessments, water charges, sewer charges, and other fees, taxes, charges and assessments of every kind and nature whatsoever assessed or charged against or constituting a lien on any Real Property and insurance premiums and deductibles, payment of which is required to be made by Tenant or any Subtenant under the terms of the Lease;

(d) insurance proceeds and condemnation awards (or sums paid in lieu thereof), payments and/or other form of consideration which Tenant or any Subtenant receives and which are used for any purpose inconsistent with the terms of the Lease or not approved in writing by Landlord;

(e) Tenant's or any Subtenant's failure to obtain and maintain (or cause to be obtained and maintained) insurance as required by the Lease;

(f) Intentionally Deleted;

(g) damage or destruction to any Facility caused by the gross negligence or intentional acts or omissions of any Tenant or Subtenant; provided, that in the case of the failure to repair or any other matter involving the expenditure of funds, there shall be no liability unless there is available cash flow from the Facility to complete such repair or other item involving the expenditure of funds;

(h) any claims, losses, costs, penalties, damages, charges and/or expenses (including reasonable attorneys' and consultants' fees) (collectively, "Losses") incurred by or asserted against Landlord as a result of Tenant's or any Subtenant's failure to observe, comply or perform any of its covenants and indemnities respecting the existence, handling, storage, transportation, release or discharge of Hazardous Materials or Hazardous Waste, as defined in Article X of the Lease subject to the notice and cure periods set forth therein; and

(i) any Losses incurred by or asserted against Landlord as a result of fraud or intentional material misrepresentation in connection with the Lease.

2.      Each Guarantor does hereby agree that, without the consent of or notice to Guarantors and without affecting any of the obligations of Guarantors hereunder: (a) any term, covenant or condition of the Lease may be amended, compromised, released or otherwise altered by Landlord and Tenant, and each Guarantor does guarantee and promise to perform all the obligations of Tenant under the Lease as so amended, compromised, released or altered; (b) any guarantor of or party to the Lease may be released, substituted or added; (c) any right or remedy under the Lease may be exercised, not exercised, impaired, modified, limited, destroyed or suspended; (d) Landlord or any other Person acting on Landlord's behalf may deal in any manner

**EXHIBIT 2**

with Tenant, any guarantor, any party to the lease or any other Person; and (e) all or any part of the Leased Premises or Tenant's rights or liabilities under the Lease may be sublet, assigned or assumed. This is a continuing guaranty. The obligations of each Guarantor under this Guaranty are independent of the Tenant Obligations.

3. Each Guarantor hereby waives and agrees not to assert or take advantage of: (a) any right to require Landlord to proceed against Tenant or any other Person or to pursue any other remedy before proceeding against any Guarantor; (b) the defense of any statute of limitations in any action under or related to this Guaranty or the Lease; (c) any right or defense that may arise by reason of the incapacity, lack of authority, death or disability of Tenant or any other Person; and (d) any right or defense arising by reason of the absence, impairment, modification, limitation, destruction or cessation (in bankruptcy, by an election of remedies, or otherwise) of the liability of Tenant, of the subrogation rights of any Guarantor or of the right of any Guarantor to proceed against Tenant for reimbursement.

4. Each Guarantor hereby waives and agrees not to assert or take advantage of any right or defense based on the absence of any or all presentments, demands (including demands for performance), notices (including notices of adverse change in the financial status of Tenant or other facts which increase the risk to such Guarantor, notices of non-performance and notices of acceptance of this Guaranty) and protests of each and every kind.

5. Neither Guarantors' obligation to make payment in accordance with this Guaranty nor any remedy for the enforcement thereof shall be impaired, modified, changed, stayed, released or limited in any manner by any impairment, modification, change, release, limitation or stay of the liability of Tenant or its estate in bankruptcy or any remedy for the enforcement thereof, resulting from the operation of any present of future provision of the Bankruptcy Code (as defined in the Lease) or other statute or from the decision of any court interpreting any of the same, and Guarantors shall be obligated under this Guaranty as if no such impairment, stay, modification, change, release or limitation had occurred.

6. Until all of Tenant's obligations under the Lease are fully performed, Guarantors (a) shall have no right of subrogation against Tenant by reason of any payments or acts of performance by Guarantors under this Guaranty; and (b) subordinate any liability or indebtedness of Tenant now or hereafter held by Guarantors to the obligations of Tenant under, arising out of or related to the Lease or Tenant's use or occupancy of the Leased Premises.

7. The liability of Guarantors and all rights, powers and remedies of Landlord hereunder and under any other agreement now or at any time hereafter in force between Landlord and any Guarantor relating to the Lease shall be cumulative and not alternative and such rights, powers and remedies shall be in addition to all rights, powers and remedies given to Landlord by law.

8. This Guaranty applies to, inures to the benefit of and binds all parties hereto, their heirs, devisees, legatees, executors, administrators, representatives, successors and permitted assigns (including any purchaser at a judicial foreclosure or trustee's sale or a holder of a deed in

**EXHIBIT 2**

lieu thereof). This Guaranty may not be assigned by Landlord without the prior written consent of Guarantors, which consent shall not be unreasonably withheld, conditioned, or delayed.

9.      Guarantors shall not, without the prior written consent of Landlord, commence, or join with any other Person in commencing, any bankruptcy, reorganization or insolvency proceeding against Tenant. The obligations of Guarantors under this Guaranty shall not be altered, limited or affected by any proceeding, voluntarily or involuntarily, involving the bankruptcy, insolvency, receivership, reorganization, liquidation or arrangement of Tenant, or by any defense which Tenant may have by reason of any order, decree or decision of any court or administrative body resulting from any such proceeding. Guarantors shall file in any bankruptcy or other proceeding in which the filing of claims is required or permitted by law all claims which any Guarantor may have against Tenant relating to any indebtedness of Tenant to any Guarantor and will assign to Landlord all rights of such Guarantor thereunder. Landlord shall have the sole right to accept or reject any plan proposed in such proceeding and to take any other action which a party filing a claim is entitled to do. In all such cases, whether in administration, bankruptcy or otherwise, the Person or Persons authorized to pay such claim shall pay to Landlord the amount payable on such claim and, to the full extent necessary for that purpose, each Guarantor hereby assigns to Landlord all of such Guarantor's rights to any such payments or distributions to which such Guarantor would otherwise be entitled; provided, however, that each Guarantor's obligations hereunder shall not be satisfied except to the extent that Landlord receives cash by reason of any such payment or distribution. If Landlord receives anything hereunder other than cash, the same shall be held as collateral for amounts due under this Guaranty.

10.     If requested by Landlord, each Guarantor shall deliver to Landlord, and upon Landlord's request, to Mortgagee(s) (a) the most recent federal income tax returns for such Guarantor within thirty (30) days after the date on which such returns are filed by such Guarantor; and (b) a personal financial statement dated within ninety (90) days. All financial information and statements provided by a Guarantor to Landlord shall be certified to be true and correct in all material respects by such Guarantor.

11.     As a material inducement to the Landlord entering into the Lease with Tenant, each Guarantor makes the following representations and warranties to Landlord, each of which shall survive the commencement and termination of the Lease:

11.1     Such Guarantor has the full power and authority to carry on its business and to enter into and perform all of its obligations under this Guaranty, and this Guaranty, when executed by such Guarantor, shall constitute the legal, valid and binding obligation of such Guarantor enforceable in accordance with its terms. No consent of any other Person not previously obtained by Guarantors, and no consent, approval, authorization or other action by or filing with any governmental authority not previously obtained, taken, or made, as applicable, is required in connection with the execution, delivery and performance of such Guarantor's obligations under this Guaranty.

11.2     Such Guarantor's execution of this Guaranty and performance of his obligations hereunder will not result in a breach or violation of (a) any governmental requirements applicable to such Guarantor or any judgment, writ, injunction, decree or order of any court relating

**EXHIBIT 2**

and known to such Guarantor; or (b) any mortgage, commitment, restriction, or other document to which such Guarantor is a party or by which such Guarantor is bound.

11.3 All statements respecting the financial condition of such Guarantor and Tenant or any Subtenant (as defined in the Lease), respectively, which have been furnished to the Landlord or which are hereafter submitted to the Landlord (a) are or shall be accurate and complete in all respects as of the dates appearing thereon; (b) present or shall present fairly the financial condition and results of operations of the Person to whom the financial statement applies as of the dates and for the periods shown on such statements; (c) disclose or shall disclose all suits, actions, proceedings and contingent liabilities materially affecting the Person to whom the financial statement applies; and (d) since the last date covered by the financial statements which have been furnished to the Landlord, there has been no material adverse change in the financial condition of the Persons to whom such statements apply. All other reports, information and documents furnished to the Landlord by such Guarantor in connection with the Lease are accurate and complete in all respects.

11.4 There are no material actions, suits, proceedings or investigations pending or, to the best of such Guarantor's knowledge, threatened against or affecting such Guarantor in any court or before any other governmental authority, nor does such Guarantor know of any basis for any such material action, suit, proceeding or investigation.

11.5 Such Guarantor has received a copy of the Lease, has carefully read such Lease, and understand all of the terms of such Lease.

12. Guarantors hereby agree that throughout the Term of the Lease, Guarantors shall not give or otherwise transfer or dispose of any material portion of Guarantors' assets to any other person or entity for less than the reasonably equivalent value of such assets. Notwithstanding the foregoing, either Guarantor may, for estate planning purposes, make a gratuitous transfer of such Guarantor's assets, outright or in trust, whether said trust is revocable or irrevocable, provided that (i) such transferee(s) executes a guaranty of the Obligations in the same form as this Guaranty pursuant to which there is no reduction in Landlord's rights or remedies, including, without limitation, the ability of Landlord to collect the Obligations against such transferee(s) (a "Transferee Guarantee"), and (ii) in the event that such transfer is in trust or to an entity, such Guarantor shall provide Landlord with evidence reasonably satisfactory to Landlord that the trustee or other person executing such Transferee Guarantee on behalf of said trust or entity is authorized to do so.

13. Throughout the Term of the Lease and for a period of twelve (12) months following the termination date of the Lease for any reason, each Guarantor agrees not to and to cause Tenant and each Subtenant not to solicit, recruit or hire any of any Facility's department heads, including but not limited to the administrator, director of nursing or dietary supervisor for any other long term care facility owned, operated or managed by Tenant, any Subtenant or their respective Affiliates without Landlord's written consent, which consent shall not be unreasonably withheld conditioned or delayed. Each Guarantor further agrees not to and to cause Tenant and each Subtenant not to remove patients from any Facility except pursuant to physician order or directions of the patient or the patient's family, nor to relocate patients at any Facility to any other long term

**EXHIBIT 2**

care facility owned, operated or managed by Tenant, any Subtenant or their respective Affiliates. In the event that either Guarantor, Tenant, or any Subtenant breaches the provisions of this Section 13, Landlord, and its successors and assigns, will be entitled to all legal and equitable remedies, including injunctive action, to enforce this provision.  The prevailing party in any such action will be entitled to recover expenses and reasonable attorney's fees.

14.    For a period which commenced on June 29, 2018 and continuing until the date which is three (3) years following the Commencement Date, as a material inducement for Landlord agreeing to enter into this Lease, Guarantors, individually and jointly, agree not to directly or indirectly acquire, take an interest in, or provide any management, consulting, or any other services to any skilled nursing or assisted living facilities other than the Facilities and those facilities listed on Schedule 19.1(p) attached to the Lease. Notwithstanding the foregoing, in the event that at any point following the date which is fifteen (15) months following the Commencement Date, the annualized EBITDAR of Tenant over the trailing six (6) month period is equal to or greater than Twenty-Four Million Dollars ($24,000,000), then the restrictions set forth in this Section 14 shall be of no further force or effect.

15.    This Guaranty shall constitute the entire agreement between Guarantors and Landlord with respect to the subject matter hereof.  No provision of this Guaranty or right of Landlord hereunder may be waived nor may any Guarantor be released from any obligation hereunder except by a writing duly executed by Landlord.

16.    If more than one Person signs this Guaranty, each such Person shall be deemed a Guarantor and the obligation of all such Guarantors shall be joint and several.  When the context and construction so requires, all words used in the singular herein shall be deemed to have been used in the plural.  The word "Person" as used herein shall include an individual, company, firm, association, partnership, corporation, trust or other legal entity of any kind whatsoever.

17.    Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable, all other provisions shall nevertheless be effective.

18.    The waiver or failure to enforce any provision of this Guaranty shall not operate as a waiver of any other breach of such provision or any other provisions hereof.

19.    Upon Landlord's demand, Guarantors shall reimburse Landlord for all costs and expenses, including attorneys, accountants, consultants, and expert witness fees and costs, which are incurred by Landlord in connection with the exercise of any or all of Landlord's rights and remedies under this Guaranty, including attorney's fees and costs incurred in connection with the enforcement of the Lease and/or all of Landlord's rights against Guarantors under this Guaranty, whether or not any legal proceedings are instituted by Landlord, and all costs, attorney's fees and expenses incurred by Landlord in connection with any bankruptcy proceeding or other similar proceeding involving Guarantors which in any way affects Landlord's exercise of any of its rights and remedies under this Guaranty.  Guarantors' obligation to reimburse Landlord under this Section shall include payment of interest on all amounts expended by Landlord from the date of expenditure at the rate of ten percent (10%) per annum.  Without limiting the terms of this Section, Guarantors agree that Landlord shall be entitled to retain such attorneys as Landlord, in its sole

Electronically Filed 04/17/2020 15:49 / OTHER / CV 20 931951 / Confirmation Nbr. 1986479 / CLCKD
Electronically Filed 09/17/2020 11:36 / SERV / CV 20 937360 / Confirmation Nbr. 2074580 / CLAHJ

**EXHIBIT 2**

discretion, may select at such attorneys' customary rates and charges for legal fees, costs and other services, and Landlord shall be entitled to full reimbursement from Guarantors for all such fees, costs and charges, regardless of any schedule, formula or other guideline for attorney's fees, whether described as reasonable or otherwise, which is established, set or adopted pursuant to any governmental requirement or by any trial, appellate, or bankruptcy court or governmental authority.

20.     Time is strictly of the essence under this Guaranty and any amendment, modification or revision hereof.

21.     If any Guarantor that is a party hereto or becomes a party hereto is a corporation, (a) each individual executing this Guaranty on behalf of said corporation represents and warrants that he is duly authorized to execute and deliver this Guaranty on behalf of said corporation, in accordance with a duly adopted resolution of the board of directors of said corporation or in accordance with the bylaws of said corporation, and that this Guaranty is binding upon said corporation in accordance with its terms; and (b) Landlord, at its option, may require such Guarantor to concurrently, with the execution of this Guaranty, deliver to Landlord a certified copy of a resolution of the board of directors of said corporation authorizing or ratifying the execution of this Guaranty.

22.     The term "Landlord" whenever hereinabove used refers to and means any Landlord in the foregoing Lease specifically named and also any assignee of said Landlord, whether by outright assignment or by assignment for security, and also any successor to the interest of said Landlord or of any assignee of such Lease or any part thereof, whether by assignment or otherwise. The term "Tenant" whenever hereinabove used refers to and means Tenant in the foregoing Lease specifically named and also any assignee or subtenant of said Lease and also any successor to the interests of said Tenant, assignee or subtenant of such Lease or any part thereof, whether by assignment, sublease or otherwise.

23.     Any notice, request, demand, instruction or other communication to be given to any party hereunder shall be in writing and shall be either served personally, or sent by overnight courier, or registered or certified mail, return receipt requested with postage prepaid, and addressed to the party to be notified at the address set forth below, or to such other place as the party to be notified may from time to time designate by at least fifteen (15) days' notice to the notifying party. Any such notice, request, demand, instruction or other communication shall be deemed sufficiently served or given for all purposes hereunder either (a) if personally served, upon such service, (b) if sent by overnight courier, the following Business Day, or (c) if mailed, two (2) Business Days after the time of mailing or on the date of receipt shown on the return receipt, whichever is first:

To Guarantor:
Paul Bergsten and Matt Dapore
c/o Boulder Healthcare LLC
544 Enterprise Drive
Lewis Center, Ohio 43035

With a copy to (which shall not constitute notice)

Electronically Filed 04/17/2020 15:49 / OTHER / CV 20 931951 / Confirmation Nbr. 1986479 / CLCKD
Electronically Filed 09/17/2020 11:30 / SCV 20 937300 / Confirmation Nbr. 2074589 / 2073803 / CLAHJ

**EXHIBIT 2**

Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Attn: Daniel J. O'Brien

To Landlord:

Boulder Property Holdings LLC
22 Herrick Drive
Lawrence, NY 11559
Attention: Samuel Goldner

24. As a further material part of the consideration to Landlord to enter into the Lease with Tenant, Guarantors agree:

24.1 The law of the state in which the Leased Premises are located shall govern all questions with respect to this Guaranty;

24.2 That any suit, action or proceeding arising directly or indirectly from this Guaranty, the Lease or the subject matter thereof shall be litigated only in courts located within the county and state in which the Leased Premises are located;

24.3 Guarantors hereby irrevocably consent to the jurisdiction of any local, state or federal court located within the county and state in which the Leased Premises are located;

24.4 Guarantors hereby waive personal service of any and all process upon it and consents to all such service of process in the manner and at the address set forth in Paragraph 20 above; and

24.5 Without limiting the generality of the foregoing, Guarantors hereby waive and agree not to assert by way of motion, defense or otherwise in any suit, action or proceeding any claim that any Guarantor is not personally subject to the jurisdiction of the above-named courts, that such suits, action or proceeding is brought in an inconvenient forum or that the venue of such action, suit or proceeding is improper.

25. All undefined capitalized terms used herein shall have the same meaning as set forth in the Lease.

*[Remainder of page intentionally left blank]*

Electronically Filed 04/17/2020 15:49 / OTHER / CV 20 931951 / Confirmation Nbr. 1986479 / CLCKD
Electronically Filed 09/17/2020 11:36 / SERVED / CV 20 937360 / Confirmation Nbr. 2074539 / CLJBB3 / CLAHJ

**EXHIBIT 2**

## MASTER LEASE GUARANTY
### SIGNATURE PAGE

IN WITNESS WHEREOF, the parties have executed this Guaranty as of this _____ 21st day of December, 2018.

GUARANTORS:

_____
Paul Bergsten

_____
Matthew Dapore

## EXHIBIT 2

## MASTER LEASE GUARANTY
## SIGNATURE PAGE

IN WITNESS WHEREOF, the parties have executed this Guaranty as of this <u>21st</u> day of December, 2018.

GUARANTORS:

_____
Paul Bergsten

_____
Matthew Dapore

**EXHIBIT 2**



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: MOTION**
September 17, 2020 11:36

By: CHRISTOPHER B. CONGENI 0078160

Confirmation Nbr. 2074580

| | |
|---|---|
| BOULDER HEALTHCARE, LLC, ET AL. | CV 20 937366 |
| vs. | |
| BOULDER FG HOLDINGS, LLC, ET AL. | **Judge:**  JOHN J. RUSSO |

**Pages Filed:**  4

## EXHIBIT 2

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| BOULDER HEALTHCARE, LLC, et al. | ) | Case No. |
| | ) | |
| *Plaintiffs*, | ) | JUDGE: |
| v. | ) | |
| | ) | |
| BOULDER FG HOLDINGS, LLC, *et al.* | ) | **PLAINTIFFS' MOTION FOR** |
| | ) | **CONSOLIDATION** |
| *Defendants.* | ) | |

Pursuant to Civ.R. 42(A), Plaintiffs, Boulder Healthcare, LLC ("Boulder Healthcare") Hillstone Healthcare, LLC ("Hillstone"), Paul Bergsten ("Bergsten"), and Matthew Dapore ("Dapore") (collectively, "Plaintiffs"), respectfully move this Court for an Order consolidating this case with the case captioned *Euclid Beach SNF Realty, LLC, et al. v. Paul Bergsten, et al.*, Cuyahoga County Court of Common Pleas, Case No. CV-20-931951, which was filed on or about April 17, 2020, and which is currently pending before the Honorable Judge Maureen Clancy ("the Euclid Beach Action").

## I.      INTRODUCTION.

This lawsuit involves claims by Plaintiffs for breach of contract, unjust enrichment, and fraudulent inducement, against Defendants, Boulder FG Holdings, LLC ("Boulder FG"), Boulder Operations Holdings, LLC ("Boulder Operations"), Samuel Goldner ("Goldner") and Ariel Fein ("Fein") (collectively, "Defendants"). Plaintiffs' claims in this action arise from the sale and transfer of shares in Boulder Operations (the "Shares"), a nursing home and assisted living business, from Boulder Healthcare to Boulder FG. The sale was conducted under a certain Unit Purchase Agreement, dated July 1, 2019, between Boulder Healthcare, Boulder FG, Dapore, Bergsten, Goldner and Fein (the "Unit Purchase Agreement"). Plaintiffs allege that during discussions concerning the sale of Boulder Healthcare's Shares in Boulder Operations to Boulder

## EXHIBIT 2

FG, Boulder FG, Goldner and Fein made material misrepresentations to Plaintiffs and induced Plaintiffs to transfer the Shares and control of Boulder Operations to Boulder FG. Plaintiffs further allege that due to these material misrepresentations by Boulder FG, Goldner and Fein, Plaintiffs made $920,000 in advances to Boulder Operations for emergency operating costs. Plaintiffs allege that Boulder FG has not paid the $1,500,000 purchase price (the "Purchase Price") for the Shares, and that $1,000,000 of the Purchase Price is past due.

Plaintiffs' claims in this litigation involve related claims and many of the same parties as those involved in the Euclid Beach Action. In the Euclid Beach Action, the plaintiff landlords of Boulder Operations ("Plaintiff Landlords") filed suit against Bergsten and Dapore on a certain December 21, 2018 Guaranty executed by Bergsten and Dapore (the "Guaranty") for rent which the Plaintiff Landlords allege to be due from Boulder Operations. Bergsten and Dapore filed a Third-Party Complaint against Goldner and Fine in the Euclid Beach Action on the same Unit Purchase Agreement at issue in this case, alleging that Golder and Fein had breached their agreement to indemnify Bergsten and Dapore for obligations under the Guaranty, and alleging that Golder and Fein fraudulently induced Bergsten and Dapore to enter into the Unit Purchase Agreement.

Bergsten, Dapore, Goldner, and Fein are all already parties to the Euclid Beach Action. The Unit Purchase Agreement and Guaranty are also already at issue in the Euclid Beach Action. Boulder Healthcare, Hillstone, Boulder FG, and Boulder Operations are not yet parties to the Euclid Beach Action, but their interests are already involved in that matter. Bergsten and Dapore hold interests in Boulder Healthcare and Hillstone, while Goldner and Fein hold interests in Boulder FG and Boulder Operations. Boulder FG and Boulder Operations have also been issued subpoenas duces tecum in the Euclid Beach Action related to the Unit Purchase Agreement and

**EXHIBIT 2**

Guaranty. The claims at issue in this action are therefore intertwined with those in the Euclid Beach Action and the full dispute should be brought before the Court in the Euclid Beach Action.

Civ. R. 42(A) states that actions may be consolidated if they involve common questions of law or fact.  The Advisory Committee Notes to Civ.R. 42 state that the "obvious purpose of Rule 42(A) is for the convenience of trial, preventing multiplicity of actions and the savings of costs." The Rule itself states that a court may consolidate in order to avoid "unnecessary costs or delay." *See,* Civil Rule 42(A)(1)(c). Courts traditionally favor consolidation because of the increased efficiency that results.  Indeed, the Ohio Supreme Court has held that "so long as the rights of the parties are adequately protected," the management of cases, including consolidation of such actions, lies within the sound discretion of the trial court.  *Director of Highways v. Kleines*, 38 Ohio St. 2d. 317, 320 (1974).

The consolidation of this action with the Euclid Beach Action will result in a substantial savings of time, expense, and judicial resources given that the claims arise from the same set of facts and involve legal issues germane to both actions. Consolidation does not prejudice any of the Defendants to this action given the pending claims and defenses raised in the Euclid Beach Action. If consolidation does not occur, the parties will undertake duplicate discovery and two separate proceedings will address similar, if not the same, issues of law and fact. Thus, consolidation promotes judicial economy for all involved. Accordingly, consolidation pursuant to Civ.R. 42(A) is proper and necessary for this matter.

Therefore, Plaintiffs respectfully request that this Court consolidate this action with the Euclid Beach Action before the Honorable Judge Maureen Clancy in the Cuyahoga County Court of Common Pleas.

**EXHIBIT 2**

Respectfully submitted,


/s/ Christopher B. Congeni
Christopher B. Congeni (#0078160)
Matthew R. Duncan (#0076420)
Daniel J. Rudary (#0090482)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH  44308
(330) 253-5060
Fax:  (330) 253-1977
Email:  cbcongeni@bmdllc.com
        mrduncan@bmdllc.com
        djrudary@bmdllc.com
*Counsel for Plaintiffs*


## <u>INSTRUCTIONS FOR SERVICE</u>

Plaintiffs request that the Cuyahoga County Clerk of Courts serve the Defendants at the addresses

listed in the caption of this Motion via certified mail, return receipt requested.


/s/ Christopher B. Congeni
Christopher B. Congeni (#0078160)
*Counsel for Plaintiffs*


4847-8149-3451, v. 1

**EXHIBIT 2**

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20937366 | D1 CM | 42580275 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

---

BOULDER HEALTHCARE, LLC, ET AL.      **PLAINTIFF**

**VS**

BOULDER FG HOLDINGS, LLC, ET AL.     **DEFENDANT**

**SUMMONS**

---

BOULDER FG HOLDINGS, LLC
CO: U-B CORPORATION, REGISTERED
AGENT
1660 WEST 2ND STREET
SUITE 1100
CLEVELAND OH 44113

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.

#### Said answer is required to be served on:



**Plaintiff's Attorney**

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

CHRISTOPHER B CONGENI
75 EAST MARKET STREET

AKRON, OH 44308-0000

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

#### Case has been assigned to Judge:

JOHN J RUSSO
**Do not contact judge. Judge's name is given for
attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT |
|---|
| Sep 17, 2020 |

By_____
Deputy

COMPLAINT FILED    09/17/2020



**EXHIBIT 2**

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20937366 | D2 CM | 42580276 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

| BOULDER HEALTHCARE, LLC, ET AL. | **PLAINTIFF** |
|---|---|
| **VS** | |
| BOULDER FG HOLDINGS, LLC, ET AL. | **DEFENDANT** |

**SUMMONS**

```
BOULDER OPERATIONS HOLDINGS, LLC
10 EASTBOURNE DRIVE
SPRING VALLEY NY 10977
```

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Plaintiff's Attorney

```
CHRISTOPHER B CONGENI
75 EAST MARKET STREET

AKRON, OH 44308-0000
```

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

**Case has been assigned to Judge:**

```
JOHN J RUSSO
```
**Do not contact judge. Judge's name is given for
attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

By _____

Deputy

| DATE SENT |
|---|
| Sep 17, 2020 |

COMPLAINT FILED    09/17/2020



CMSN130

**EXHIBIT 2**

| **CASE NO.** | | **SUMMONS NO.** |
|---|---|---|
| CV20937366 | D3 CM | 42580277 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

| BOULDER HEALTHCARE, LLC, ET AL. | **PLAINTIFF** |
|---|---|
| **VS** | |
| BOULDER FG HOLDINGS, LLC, ET AL. | **DEFENDANT** |

## SUMMONS

SAMUEL GOLDNER
1251 46TH STREET
APT. 1
BROOKLYN NY 11219

**You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.**

**Said answer is required to be served on:**



Plaintiff's Attorney

CHRISTOPHER B CONGENI
75 EAST MARKET STREET

AKRON, OH 44308-0000

**You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.**

**Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)**

**Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.**

**If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.**

Case has been assigned to Judge:

JOHN J RUSSO
**Do not contact judge. Judge's name is given for attorney's reference only.**



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| **DATE SENT** |
|---|
| Sep 17, 2020 |

By_____
**Deputy**

COMPLAINT FILED   09/17/2020

CMSN130

## EXHIBIT 2

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20937366 | D4 CM | 42580278 |

Rule 4 (B) Ohio

Rules of Civil Procedure

| BOULDER HEALTHCARE, LLC, ET AL. | **PLAINTIFF** |
|---|---|
| **VS** | |
| BOULDER FG HOLDINGS, LLC, ET AL. | **DEFENDANT** |

## SUMMONS

ARIEL FEIN
10 EASTBOURNE DRIVE
SPRING VALLEY NY 10977

**You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.**

**You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.**

**Said answer is required to be served on:**



**Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)**

Plaintiff's Attorney

CHRISTOPHER B CONGENI
75 EAST MARKET STREET

AKRON, OH 44308-0000

**Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.**

**If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.**

**Case has been assigned to Judge:**

JOHN J RUSSO
**Do not contact judge. Judge's name is given for attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT |
|---|
| Sep 17, 2020 |

By _____
Deputy

COMPLAINT FILED    09/17/2020



CMSN130

**EXHIBIT 2**

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20937366 | D1 CM | 42581095 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

| BOULDER HEALTHCARE, LLC, ET AL. | **PLAINTIFF** |
|---|---|
| **VS** | |
| BOULDER FG HOLDINGS, LLC, ET AL. | **DEFENDANT** |

## SUMMONS

```
BOULDER FG HOLDINGS, LLC
CO: U-B CORPORATION, REGISTERED
AGENT
1660 WEST 2ND STREET
SUITE 1100
CLEVELAND OH 44113
```

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

**Said answer is required to be served on:**



Plaintiff's Attorney

```
CHRISTOPHER B CONGENI
75 EAST MARKET STREET

AKRON, OH 44308-0000
```

**Case has been assigned to Judge:**

```
JOHN J RUSSO
```
**Do not contact judge. Judge's name is given for
attorney's reference only.**



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT |
|---|
| Sep 17, 2020 |

By _____
            Deputy

COMPLAINT FILED    09/17/2020



CMSN130

## EXHIBIT 2

# SUMMONS IN A CIVIL ACTION    COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20937366 | D4 CM | 42581098 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

| BOULDER HEALTHCARE, LLC, ET AL. | **PLAINTIFF** |
|---|---|
| **VS** | |
| BOULDER FG HOLDINGS, LLC, ET AL. | **DEFENDANT** |

## SUMMONS

ARIEL FEIN
10 EASTBOURNE DRIVE
SPRING VALLEY NY 10977

**You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.**

**You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.**

**Said answer is required to be served on:**



Plaintiff's Attorney

CHRISTOPHER B CONGENI
75 EAST MARKET STREET

AKRON, OH 44308-0000

**Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)**

**Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.**

**If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.**

**Case has been assigned to Judge:**

JOHN J RUSSO
**Do not contact judge. Judge's name is given for
attorney's reference only.**



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT |
|---|
| Sep 17, 2020 |

By _____

Deputy

COMPLAINT FILED    09/17/2020

CMSN130

# EXHIBIT 2

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20937366 | D3 CM | 42581097 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

| |
|---|
| BOULDER HEALTHCARE, LLC, ET AL.  **PLAINTIFF** |
| **VS** |
| BOULDER FG HOLDINGS, LLC, ET AL.  **DEFENDANT** |

## SUMMONS

| |
|---|
| SAMUEL GOLDNER |
| 1251 46TH STREET |
| APT. 1 |
| BROOKLYN NY 11219 |

**You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.**

**You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.**

#### Said answer is required to be served on:



Plaintiff's Attorney

| |
|---|
| CHRISTOPHER B CONGENI |
| 75 EAST MARKET STREET |
| |
| AKRON, OH 44308-0000 |

**Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)**

**Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.**

**If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.**

#### Case has been assigned to Judge:

| |
|---|
| JOHN J RUSSO |
| **Do not contact judge. Judge's name is given for
attorney's reference only.** |



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT |
|---|
| Sep 17, 2020 |

By 

Deputy

COMPLAINT FILED    09/17/2020

**EXHIBIT 2**

| **CASE NO.** | | **SUMMONS NO.** |
|---|---|---|
| CV20937366 | D2 CM | 42581096 |

Rule 4 (B) Ohio

Rules of Civil Procedure

| BOULDER HEALTHCARE, LLC, ET AL. | **PLAINTIFF** |
|---|---|
| **VS** | |
| BOULDER FG HOLDINGS, LLC, ET AL. | **DEFENDANT** |

## SUMMONS

BOULDER OPERATIONS HOLDINGS, LLC
10 EASTBOURNE DRIVE
SPRING VALLEY NY 10977

**You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.**

**You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.**

**Said answer is required to be served on:**



**Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)**

Plaintiff's Attorney

CHRISTOPHER B CONGENI
75 EAST MARKET STREET

AKRON, OH 44308-0000

**Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.**

**If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.**

**Case has been assigned to Judge:**

JOHN J RUSSO
**Do not contact judge. Judge's name is given for attorney's reference only.**



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| **DATE SENT** |
|---|
| Sep 17, 2020 |

**By** _____
**Deputy**



COMPLAINT FILED   09/17/2020

**EXHIBIT 2**